

**U.S. Department of Justice**

*United States Attorney*
*Southern District of New York*

---

*The Silvio J. Mollo Building*
*One Saint Andrew's Plaza*
*New York, New York 10007*

September 12, 2023

**BY ECF**
The Honorable J. Paul Oetken
United States District Judge
Southern District of New York
40 Foley Square
New York, New York 10007

    Re:    *United States v. Mariah Jaquez*, S8 21 Cr. 190 (JPO)

Dear Judge Oetken:

    The Government respectfully submits this letter in advance of the sentencing of defendant Mariah Jaquez. For the reasons set forth below, the Government submits that a term of imprisonment of at least one year is sufficient but not greater than necessary to serve the legitimate purposes of sentencing.

    A.    **Factual Background**

    This case stems from law enforcement's child exploitation investigation concerning a Facebook user purporting to be a female named "Ashley" (later identified as co-defendant Johnny Roman) who contacted at least 3,000 women and asked them whether they would like a "job" sending sexually explicit messages and images to a Kik user named Theboss12189 (later identified also as Roman). Often, Ashley would tell a young woman that Theboss12189 "just fired a girl" and that the young woman will be paid for the "job." During the course of the "job," law enforcement learned that several women—including Jaquez—sent images containing child pornography to Theboss12189. (PSR[1] ¶¶ 13-15).

    On October 2, 2020, at approximately 11:18 AM, Roman, while using the name "Ashley," contacted Jaquez on Facebook and asked if she wanted a job. At approximately 3:38 PM, Jaquez stated yes, and Ashley gave Jaquez the information for Theboss12189 and told her that she could be paid $2,500 to be a "naughty babysitter." At 3:53 PM, Jaquez downloaded Kik messenger.[2] Between that time and approximately 7:01 PM, Jaquez and Ashley appeared to have friendly conversations about messaging with Theboss12189 and other topics. For example, Jaquez asked

---

[1] PSR refers to the presentence investigation report in this case, which was revised on August 3, 2023. (ECF No. 317.)
[2] Law enforcement did not recover Jaquez's conversation with Theboss12189. Jaquez deleted the messages from her phone, and the messages were not available on Roman's phone at the time of his arrest in December 2020.

Ashley whether she lived in the Bronx because Jaquez was looking for more friends. Jaquez also gave Ashley advice on where to get a tattoo. (PSR ¶ 32).

At some point, Jaquez also asked Ashely what "personal videos" were, which is a reference to a request that Theboss12189 made of Jaquez. While speaking with Ashley, between 5:15 and 6:37 PM, Jaquez made approximately seven videos of her performing oral sex on Victim-4, ▓▓▓▓▓▓▓▓▓▓. In her conversation with Ashley, there is no indication that Jaquez hesitated or resisted Roman's requests for videos of her sexually abusing Victim-4. At approximately 7:01 PM, Jaquez asked Ashley how long it would take for the Theboss12189 to pay her because she is owed $2,500. She also said, "I did role play aswell" and added a smiley face emoji. Some of those chats are depicted below.

> How long did he take to send you the money to your cashapp
>
> Ok thanks ! And he should send it before midnight
>
> You did personal video?
>
> No doing that another day
>
> I did role play aswell😂

At approximately, 7:40 PM, Jaquez deleted the videos from her phone. (PSR ¶¶ 32-33).

The next day, Jaquez still had not been paid. As a result, at approximately 12:51 PM, Jaquez asked Ashley again when she would be paid. Ashley replied that Theboss12189 was mad because Jaquez texted while Theboss12189's wife was around. In response, at approximately 1:48 PM, Ashley, for the first time, relayed a threat, stating: "Be careful he telling one of the other girls to post your stuff." (PSR ¶ 34). The entire conversation between Ashley and Jaquez is attached as Exhibit A. At no point prior to Ashley relaying this threat is there any indication that Jaquez was threatened. Nor is there any indication that Jaquez was threatened to make the videos with Victim-4. Indeed, prior to that first threat, Jaquez and Ashley continued to have a friendly and cordial conversation.

After Jaquez received the first threat, Jaquez asked for Ashley to tell Theboss12189 not to post videos because it would "ruin [her] life." At approximately 6:13 PM, Jaquez filed a police report which stated that, around 2:30 PM that day, she was talking to someone on Kik who said that he would find where she lives and kill her and Victim-4. (PSR ¶¶ 34-35). In police report, Jaquez did not reveal that she had made videos sexually abusing Victim-4.

On or about October 8, 2020, Ashley contacted Jaquez again via text message and said, "This Ashley. Told you we was gonna make you go viral. . . . You have 2 mins to hit the [Theboss12189] up or we making your page public." Less than an hour later, Jaquez filed a second police report, in which she said that, around 11:30 AM, an unknown perpetrator made a threat

about Victim-4. (PSR ¶ 36). Once again, in police report, Jaquez did not reveal that she had made videos sexually abusing Victim-4.

On October 23, 2020, Jaquez was arrested and gave a post-*Miranda* statement to law enforcement, in which she admitted to making videos where she performed oral sex on Victim-4.

### B. Jaquez's Conduct While on Bail

Jaquez has generally had a poor track record while on pretrial release. Five violation memorandums have been submitted to the Court as a result of her conduct. As described in the PSR and the fifth violation memorandum, Jaquez has struggled to comply with the requirements of location monitoring, including by failing to return home by curfew and failing to charge her location monitoring equipment. Furthermore, Jaquez has failed to engage with mental health treatment, including by having inconsistent attendance at her mental health treatment appointments and failing to return calls from the mental health treatment provider. On April 18, 2023, she was discharged from mental health treatment because of her poor attendance and "lack of motivation and engagement." Moreover, Jaquez has failed to obtain consistent employment while on supervision. (PSR ¶¶ 6, 116).

The parties have had numerous court conferences to address Jaquez's non-compliance. Despite these conferences and repeated warnings from the Court, Jaquez continues to have issues with compliance. Based on the Government's discussions with Pretrial Services, the Government understands that, since the Court's last status conference with Jaquez on June 6, 2023, Jaquez has continued to allow the battery on her GPS bracelet to die. When the battery is dead, Pretrial Services cannot track Jaquez's activity. In addition, Jaquez's engagement with mental health treatment remains inconsistent.

### C. Procedural History and Guidelines Calculation

On October 27, 2020, Jaquez was arrested on a complaint which charged her with one count of production of child pornography. On March 23, 2021, a grand jury in this District returned Indictment S1 21 Cr. 190 (JPO), which charged Jaquez with one count of production of child pornography.

On May 15, 2023, the Government filed Information S8 21 Cr. 190 (JPO), which charged Jaquez with one count of possession of child pornography, in violation of 18 U.S.C. §§ 2252A(a)(5)(B), (b)(2), and 2. That same day, Jaquez pled guilty in front of the Honorable James L. Cott, Chief United States Magistrate Judge, pursuant to a plea agreement dated April 13, 2023 (the "Plea Agreement"). On May 22, 2023, this Court accepted the plea.

In the Plea Agreement, the parties stipulated to a Guidelines sentence of 20 years' imprisonment. The offense level is 43, and it includes enhancements such as a four-level increase under U.S.S.G. § 2G2.1(b)(4)(B) because the offense involved material that portrays ▮▮▮▮▮ and a two-level increase under U.S.S.G. § 2G2.1(b)(5) because Jaquez was a ▮▮▮▮▮ ▮▮▮▮▮▮▮▮▮▮. Jaquez's criminal history category is I.

The Probation Office agrees that this Guidelines calculation is correct, and it recommends a sentence of 54 months' imprisonment. The defense requests time served.

D.  Discussion

1.  Applicable Law

The Guidelines are "the product of careful study based on extensive empirical evidence derived from the review of thousands of individual sentencing decisions," *Gall v. United States*, 552 U.S. 38, 46 (2007), and district courts are required to treat them as the "starting point and the initial benchmark" in sentencing proceedings. *Id.* at 49.

After calculating the Guidelines, the Court must consider seven factors: (1) "the nature and circumstances of the offense and the history and characteristics of the defendant," (2) the purposes of sentencing discussed in the next paragraph, (3) "the kinds of sentences available," (4) the Guidelines range itself, (5) any relevant policy statements by the Sentencing Commission, (6) "the need to avoid unwarranted sentence disparities among defendants," and (7) "the need to provide restitution to any victims." 18 U.S.C. § 3553(a)(1)-(7); *see also Gall*, 552 U.S. at 49-50 & n.6.

In determining the appropriate sentence, Section 3553(a) directs judges to "impose a sentence sufficient, but not greater than necessary, to comply with the purposes" of sentencing, which are:

(A)  to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;
(B)  to afford adequate deterrence for criminal conduct;
(C)  to protect the public from further crimes of the defendant; and
(D)  to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner.

18 U.S.C. § 3553(a)(2).

2.  A Sentence of At Least One Year of Imprisonment Is Appropriate in this Case

As the Government stated in the Plea Agreement, the Government believes that a sentence substantially below the Stipulated Guidelines Sentence of 20 years' imprisonment is appropriate in this case in light of several mitigating factors. However, in light of Jaquez's extremely serious criminal conduct and dismal record with compliance while on pretrial supervision, the Government believes that a term of incarceration is necessary to achieve the goals of sentencing.

*First*, a term of at least one year of incarceration is necessary to reflect the seriousness of the offense and provide just punishment for the offense. Jaquez, ▓▓▓▓▓▓▓▓▓▓▓▓ committed one of the most heinous acts ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓. Jaquez voluntarily performed oral sex on Victim-4. She recorded that conduct. She then sent those videos to a total stranger on the Internet that she had met only hours earlier, without concern that those images and videos could remain on the Internet forever. And, once she was done, she asked when she would be paid and sent a smiling emoji to Ashley. She abused her position ▓▓▓▓▓▓ on the vulnerable Victim-4. This serious and disturbing conduct demands a meaningful consequence.

While the defendant states in her submission that she "fully accepts responsibility" for her conduct (Def. Letter 10), her claim that she recorded herself sexually abusing Victim-4 *only after*

she was threatened by Ashley/Roman (Def. Letter 6-7) is inconsistent with the evidence and with full acceptance. The only evidence supporting that claim are Jaquez's own self-serving statements to law enforcement. (*See* Def. Letter 8-9). However, when reviewing Jaquez's own conversation with Ashley, it is clear that Jaquez expressed no concern about the videos she was asked to make and that she was threatened only after she sexually abused Victim-4 and only after Jaquez demanded payment for the videos. *See* Exhibit A. The Government has discussed this point with defense counsel, and the fact that Jaquez continues to persist in this inaccurate story demonstrates that Jaquez has not fully grasped the severity of her conduct. The threats provide no justification for her conduct, and her conduct demands a serious punishment.

*Second*, a term of incarceration is necessary to promote respect for the law and specific deterrence. While the instant conduct occurred over only one night in October 2020, Jaquez has demonstrated a continued disrespect of the law and orders of the Court through her poor record while on pretrial supervision. Rather than taking advantage of all the services that Pretrial Services has offered, including mental health treatment, Jaquez "has lacked motivation with treatment and has displayed disengagement from the supervision process." (PSR at 38). In light of the record, the Government believes a term of incarceration is necessary to ensure that Jaquez does not engage in further criminal conduct. Unfortunately, Jaquez has demonstrated time and time again that she is unwilling or unable to comply with less severe restrictions on her freedom. Moreover, Jaquez makes clear in her submission that this crime was one of greed, stating that she "was desperate for money" and that she committed the conduct "believing that she would be paid thousands of dollars." (Def. Letter 6; *see also id.* 10 (speculating that "perhaps if she was not desperate for money," she would not have made the videos)). In light of this stated motivation and Jaquez's record while on pretrial supervision, Jaquez has provided no assurance that she will refrain from engaging in further criminal conduct when offered another opportunity for a quick payment.

*Third*, a term of incarceration is necessary for general deterrence. Jaquez committed one of the most revolting and troubling acts █████████████, which is reflected in the high Guidelines range. Thus, imposing a term of incarceration is necessary to ensure that █████████████████████████████████████████ do not similarly sexually abuse those children for monetary gain. A message must be sent that this serious conduct will be met with serious punishment, including a term of incarceration.

Notwithstanding the above, the Government still believes that there are significant mitigating factors, including Jaquez's ████████████████████████████████████████████ ████████████████████, and lack of criminal history, that warrant a sentence substantially below the Stipulated Guidelines Sentence of 20 years' imprisonment. However, for the reasons discussed above, a sentence of time served—resulting in zero days of imprisonment—will not achieve the goals of sentencing.

### E. The Court Should Reject the Defendant's Objections to Certain Supervised Release Special Conditions

This Court may "impose special conditions of supervised release that are reasonably related to certain statutory factors governing sentencing, involve[ ] no greater deprivation of liberty than is reasonably necessary to implement the statutory purposes of sentencing, and are consistent with pertinent Sentencing Commission policy statements." *United States v. Myers*, 426 F.3d 117, 123–24 (2d Cir. 2005) (quoting 18 U.S.C. § 3583(d)). In addition, this Court has "broad discretion to

tailor conditions of supervised release to the goals and purposes outlined in § 5D1.3(b)." *Id.* at 124; *see also* U.S.S.G. § 5D1.3(d) (describing recommended special conditions). When determining whether to impose special conditions, "[a] district court is required to make an individualized assessment . . . . and to state on the record the reason for imposing it; the failure to do so is error." *United States v. Pellistri*, 811 F. App'x 672, 676 (2d Cir. 2020) (citation omitted)

Here, Jaquez objects to six of the special conditions of supervised release recommended by the Probation Office. For the reasons provided in the PSR (*see* PSR at 38) and for the additional reasons explained below, the Government believes the conditions below should be imposed because they are "reasonably related" to the statutory goals of sentencing. *Myers*, 426 F.3d at 123.

- Outpatient drug treatment: As stated in the PSR, Jaquez reported that she has regularly used marijuana. (PSR at 39). She also has tested positive for marijuana twice while on pretrial supervision, including as recently as February 2021. (PSR ¶ 119). In light of this history, it is entirely appropriate for Jaquez participate in outpatient treatment program. *See Pellistri*, 811 F. App'x at 677 (affirming the imposition of a substance abuse treatment program where the defendant admitted "that he began using marijuana approximately weekly in his late twenties and continued until the time of his arrest"); *see also* U.S.S.G. § 5D1.3(d)(4) (recommending substance abuse treatment "[i]f the court has reason to believe that the defendant is an abuser of narcotics"). Based on the Government's conversation with the Probation Office, the Government understands that, if this condition is imposed, Jaquez will undergo a substance abuse evaluation and if, based on that evaluation, treatment is needed, she will be required to participate in treatment.

- Outpatient sex offender treatment: While Jaquez may have agreed to sex offender treatment through ACS, the Court will have no assurance that she has completed the treatment. Nor will the Probation Office have any way to enforce such a requirement. As a result, a special condition of outpatient sex offender treatment is necessary so that the Probation Office can ensure Jaquez's compliance, report to the Court if she is not compliant, and protect the community. *See* U.S.S.G. § 5D1.3(d)(7) (recommending treatment and monitoring of sex offenders). The Probation Office should not be effectively required to cede its supervisory authority to a third party like ACS.

- Contact with children unless approved by Probation & contact with Victim-4:[3] In light of the nature of the instant offense, it is imperative that Jaquez not have deliberate contact with any child under the 18 years of age, including Victim-4, unless the Probation Office approves such contact. *See Pellistri*, 811 F. App'x at 677 (noting the imposition of a similar special condition in a case involving the sexual exploitation of a child). In addition, for reasons similar to the one discussed above, the Probation Office must be able to supervise this special condition so that the Probation Office can

---

[3] In the PSR, the Probation Office recommended *no* contact with Victim-4. (*See* PSR at 42). However, based on the Government's discussions with the Probation Office, the Government believes, and the Probation Office agrees, that, in this particular case, there may be deliberate contact if and only if approved by the Probation Office.

ensure compliance, protect the community, and alert the Court if Jaquez is not compliant. Moreover, this was a condition of Jaquez's pretrial release, and there is no reason why it should not remain in effect given the nature of the offense.

- Installation of tracking devices: Because Jaquez recorded herself sexually abusing Victim-4 and then sent those videos via the Internet to a co-conspirator, electronic monitoring of Jaquez's Internet is necessary to ensure that Jaquez does not engage in similar conduct. This condition is routinely imposed in sex offense cases involving the Internet, and there is no reason to deviate from this routine practice in this case. *See, e.g.*, *United States v. Savastio*, 777 F. App'x 4, 5 (2d Cir. 2019) (affirming the imposition of a condition that defendant must not, among other things, possess a computer or Internet capable device unless the Probation Office can track the usage); *United States v. Browder*, 866 F.3d 504 (2d Cir. 2017) ("Browder was convicted of possessing over 462 digital images of child pornography that he received (and shared) on internet exchanges, so computer monitoring is 'reasonably related' to the nature and circumstances of the offense and Browder's history and characteristics. The monitoring is also 'reasonably necessary' for the broad sentencing purposes indicated in U.S.S.G. § 5D1.3(b) and 18 U.S.C. § 3553(a)(2), including specific deterrence, public protection, and rehabilitation."). In order to protect the community and, in particular, minors, the Probation Office must be able to monitor Jaquez's electronic devices.

- Financial information: While this case did not involve financial fraud, if the Court imposes any financial penalties in connection with sentencing, the Probation Office must have access to Jaquez's financial information so that the Probation Office can ensure that she is meeting her financial obligations. *See* U.S.S.G. § 5D1.3(d)(2) (recommending access to financial information when a financial penalty is imposed).

### F. Conclusion

For the reasons set forth above, a sentence of at least one year of imprisonment, would be sufficient, but not greater than necessary, to achieve the purposes of sentencing.

Respectfully submitted,

DAMIAN WILLIAMS
United States Attorney

By: \_\_\_\_\_/s/_____
Rebecca T. Dell
Assistant United States Attorney
Tel: (212) 637-2198

Cc: All Counsel (ECF)