N9KCrivS

1    UNITED STATES DISTRICT COURT
     SOUTHERN DISTRICT OF NEW YORK
2    ------------------------------x

3    UNITED STATES OF AMERICA,

4              v.                         21 Cr. 190 (JPO)

5    KAITLYN RIVERA,

6                   Defendant.

7    ------------------------------x

8                                         New York, N.Y.
                                          September 20, 2023
9                                         12:00 p.m.

10

     Before:
11
                        HON. J. PAUL OETKEN,
12
                                          District Judge
13
                            APPEARANCES
14
     DAMIAN WILLIAMS,
15        United States Attorney for the
          Southern District of New York
16   BY:  REBECCA DELL
          Assistant United States Attorney
17
     PATRICK J. JOYCE
18        Attorney for Defendant

19   ALSO PRESENT:
     Jake Drucker, AUSA Intern
20

21

22

23

24

25

N9KCrivS

1         (Case called)

2         MS. DELL:  Good afternoon.  Rebecca Dell on behalf of

3    the government.  I'm joined by an intern in our office, Drake

4    Drucker.

5         THE COURT:  Good afternoon.

6         MR. JOYCE:  Good afternoon, your Honor.  My name is

7    Patrick Joyce.  I represent Kaitlyn Rivera, who is present and

8    seated to my right.  I would also note that Ms. Rivera's

9    mother, who submitted a letter, is also in the courtroom.

10         THE COURT:  Good afternoon.  Thank you.

11         We're here for sentencing in this case.  Ms. Rivera

12    pleaded guilty to possession of child pornography, and I want

13    to start by making sure I received and reviewed everything I

14    should have.

15         I reviewed the presentence report; defense counsel's

16    submission, dated September 1st, with letters from family

17    members; also an evaluation report by Dr. Cruger; and the

18    Yonkers police report that's attached, all of which I read; and

19    then the government's submission, dated September 13th, with

20    the WhatsApp chat transcript.

21         Do I have everything I should have from the

22    government?

23         MS. DELL:  Yes, your Honor.

24         THE COURT:  And the defense?

25         MR. JOYCE:  Yes.

N9KCrivS

1          THE COURT:  Mr. Joyce, do you have any objections to

2     the presentence report?

3          MR. JOYCE:  No.

4          THE COURT:  And does the government?

5          MS. DELL:  No.

6          THE COURT:  I adopt the facts in the presentence

7     report as my findings per sentencing.

8          The starting point is the sentencing guidelines, which

9     are advisory and not mandatory.  In this case, the presentence

10    report calculates a guidelines sentence that is consistent with

11    the plea agreement, and I find that that is correct, and I

12    adopt paragraphs 75 to 92 to the presentence report.  The total

13    offense level is 39, defendant has no criminal history, and

14    therefore the guideline range is 240 months, which is the

15    statutory maximum.

16          I read all your submissions, but I'd like to give you

17    a chance to speak, starting with Mr. Joyce.

18          MR. JOYCE:  Thank you, your Honor.

19          Quoting from paragraph 110 of the probation report,

20    Ms. Rivera disclosed having the following tattoos:  "Gabriel"

21    inscribed with a rose on top of her left foot; "Gabriel"

22    inscribed on the side of her right knee; a "G" heart and "K"

23    inscribed behind the left ear; September 14th, 2017, in Roman

24    numerals on the back of her neck; November 30th, 1993 in Roman

25    numerals on her upper right arm; and "Gabriel" inscribed

N9KCrivS

| 1 | vertically on the right side of her neck.  She explained that

| 2 | her former boyfriend brought her to tattoo parlors and forced

| 3 | her, through threats and violence, to get tattoos of his name,

| 4 | his birthday, and the date of their first date.  The defendant

| 5 | would like to remove these and cover these in the future.

| 6 |        It may seem like an odd place to start, but, your

| 7 | Honor, I wanted to address immediately what seems to be the

| 8 | concerns both of probation and the government.  We know where

| 9 | the guidelines are and we know what the statute says the Court

| 10 | is supposed to consider, but probation suggests that four

| 11 | years' incarceration would be a reasonable sentence and the

| 12 | government says at least two years.  We believe that any

| 13 | incarceration is greater than what is necessary to achieve the

| 14 | goals of sentencing.

| 15 |        What appeared over and over again was this concept

| 16 | that Ms. Rivera was somehow minimizing her conduct, that she

| 17 | didn't say certain things to Dr. Cruger or that in our letter

| 18 | we were suggesting that she was manipulated.  What we tried to

| 19 | do, Judge, is get the Court to understand who she is.  I'm not

| 20 | going to repeat the details in the reports about what happened

| 21 | to her when she was younger or what I just mentioned about the

| 22 | type of abuse she has survived that brought her to the age of

| 23 | 22 when, I would call a master manipulator, Johnny Roman got a

| 24 | hold of her.

| 25 |        The reason why we start that way, Judge, is because

1    everyone agrees, a horrific act, awful.  What makes the case so

2    difficult is someone like her and I think some of the other

3    people in this case have never done anything wrong before in

4    their life, and now, all of a sudden, they go from zero to

5    8,000.  So how do we understand that?  How do we grasp it?  The

6    point is, she was brought to that point at age 22 in her life

7    susceptible to certain things, and I suggest not by way of

8    excusing the behavior, but because we want to try to understand

9    the behavior.

10            And then I suggest when the Court gets to that point,

11    the statute that also says -- so let's look at 3553(a), what

12    are the factors the court must consider, and it's not just the

13    characteristics of the offense, it's also the characteristics

14    of who Ms. Ms. Rivera is as she sits here today.  And again,

15    all that we mentioned in the report, which I won't repeat

16    today, is what brought her and brings her here today, but

17    there's so much more.

18            The event occurs in May of 2020, she does not get

19    arrested until April of 2021.  She has committed no

20    infractions, no -- she doesn't even jaywalk, she gets in no

21    trouble.  In fact, the Court knows, she's never been in trouble

22    but for this one hour of her life, hour and a half when she did

23    this awful thing.  She's never done anything wrong in her life.

24    But oftentimes a defendant will come before a judge and say,

25    well, I got arrested and now I turned my life around.  This

N9KCrivS

1    situation is that she didn't even get arrested.  She did that

2    event, felt awful about it, and what we can see in the printout

3    that's the exhibit that the government has put forth is this.

4    I think she says, oh, let's do some more or something of that

5    nature, but she comes to her senses, and what she actually does

6    is, on May 20th, she convinces this individual to give her an

7    address thinking that she's going to go drive there, and as

8    soon as she gets the address, she calls the Yonkers Police and

9    she makes the report about what's going on, and she gives them

10   the address.

11           THE COURT:  But isn't that because she didn't get

12   paid?

13           MR. JOYCE:  Not when she calls the police, Judge.

14   When she calls the police, it's because she now has realized

15   this was awful, this was not right.  I agree that when the

16   first time they stopped, she realized she wasn't going to get

17   paid, but that wasn't her only motivation, because if it was,

18   Judge, I would suggest she might have gone onto some other type

19   of illegal activity to try to make money, and the fact is, in

20   this situation, that's not what happened.  Not only did she not

21   go back to that type of activity, she went to no other type of

22   illegal activity.

23           What we know is that from the day that she was

24   arrested, she had her job, she was put on a bracelet — what she

25   does is medical billing — and she had that job until January of

N9KCrivS

2022.  She lost it because of the bracelet.  What happened is
her workers caused problems for her, they started making
comments about her.  It just wasn't going to work for her to
stay there.  So you could think, okay, she lost her job, maybe
she'll do nothing with her life.  In fact, she went out, she
got an offer from another medical billing outfit.  She talked
to pretrial about that job.  There were questions about whether
there was going to be internet access, and so she couldn't take
it immediately, but she still has that offer open.  So, if the
Court, we're hoping, doesn't send her to jail, after she leaves
here today, she's going to continue to work with now probation,
no longer pretrial, and try to obtain that job so that there
can be some type of monitoring of her medical billing.

          What also happened is she came to some conclusions
about her life.  It was Ms. Rivera who said "I need therapy."
I'm not going to suggest, and the report shows, she hasn't been
great with therapy, but I also like to think about the Ted
Lasso show where the therapist says the truth will set you
free, but first it's going to use --

          THE COURT:  What is it?

          MR. JOYCE:  The truth will set you free, but first
it's going to -- and she says basically make you very mad.

          The point is, therapy is difficult.  It's difficult
for anybody.  For someone who's 23, 24, 25, it's not the
easiest thing, but Ms. Rivera asked for therapy and she went

N9KCrivS

1    into therapy, and the report says she's is hoping to continue

2    to get therapy.

3          What we also know, Judge, what happened since this

4    event is that she married a man that she met and she became a

5    tremendous caretaker to that person's mother.  Now, her

6    husband's not here today because he is taking care of her.  She

7    has physical ailments and he's taking care of her and he

8    couldn't be here, but he did offer the support, and the

9    mother-in-law offered the letters that showed how attentive

10   Ms. Rivera has been.

11         What we also know, Judge, and I would suggest that

12   it's very clear not from just the report, but Dr. Cruger I

13   think makes it very clear, Ms. Rivera is not a pedophile.  This

14   is definitely a one-off.  This is something that happened in a

15   certain circumstance, it's not going to happen again.

16         The Court has many factors to consider, and I won't go

17   over all the specifics about general deterrence or specific

18   deterrence.  I will suggest, Judge, I'm aware of yesterday's

19   sentence, and I do know the Court is bound by statute to avoid

20   unwarranted disparities.  So we again think that that's a --

21   suggests that the Court should sentence Ms. Rivera to a

22   non-jail sentence.

23         But I think what we have to do is be honest about the

24   statute and what we have, because, really, it's about

25   punishment, and the question is:  What's enough punishment for

N9KCrivS

1    that activity?  What's enough punishment for an hour and a half

2    of some of the worst acts anyone can ever commit?

3            So we do know that she lost her job.  We do know that

4    she has not been able to see her family because her brother is

5    there, there's been no way for her to be able to see or be in

6    her family home.  And she has not seen her brother, who she had

7    had a very good relationship with, and I think Ms. Rosado wrote

8    and said that he misses her.  We do know that in the future,

9    although the government suggests everyone convicted is going to

10   get this, they seem to minimize it, what it is to be a sex

11   offender and to be in that sex offender registry and to be a

12   sex offender for the rest of your life.  She's been able to

13   obtain a job and have a job going forward, but if she doesn't

14   obtain that job and get that job, we know that when someone

15   does a background check, it's going to be very difficult for

16   her to obtain employment.

17           What we know about the jails, Judge, one day, one

18   month, one year, two years, is we know they're in terrible

19   shape right now.  We know they will offer no mental health

20   treatment for her.  We know that there will be no

21   rehabilitation, there will be no training for employment.  So

22   she's already made the steps to try to rehabilitate going

23   forward.  My suggestion is that to send her to jail will derail

24   that and will actually then impact so much more of that aspect

25   of the statute that talks about rehabilitation.

N9KCrivS

1         Your Honor, it's unfortunate at times that the court

2    system is set up the way it is, and I know in this courtroom,

3    usually, the pleas are taken here.  Under this circumstance for

4    some reason with scheduling, we went to magistrate court to

5    take the plea.  The suggestion that Ms. Rivera is not

6    remorseful or is somehow minimizing her role in what happened

7    is totally belied what happened that day, Judge, and she in her

8    own words will tell you what she would like to say to the

9    Court.  I will tell you she sits here before you right now a

10   25-year-old who is hoping to get her life straight.

11        Thank you, Judge.

12        THE COURT:  Thank you, Mr. Joyce.

13        Ms. Dell, I read the government's submission and the

14   attachment, which is the transcript of the WhatsApp chats.

15   Anything you'd like to add today?

16        MS. DELL:  Yes, your Honor.  I just want to respond to

17   a couple of points that the defense counsel said here.

18        I believe one of the points he raised was about the

19   police report that Ms. Rivera filed after the incident after

20   she committed this conduct.  There's really no evidence that

21   she was trying to collect his address so that she could report

22   it to the police, but even if that is the case, I don't have

23   the police report in front of me, but my recollection is that

24   she did not admit to her own conduct to the police, and I think

25   that's an important point to make.

N9KCrivS

1          I also want to address the real seriousness of the

2    offense, and this will go toward the point of any concern about

3    unwarranted sentencing disparities.  I think there are

4    distinctions between the case from yesterday and the case

5    today.

6          Now, one thing to note is that we do have the chats

7    with Roman in this case, and yesterday we did not have the

8    chats with Roman, we just had the chats with Ashley, so it's a

9    little hard to compare apples to apples.  But here, we do have

10   the chats with Roman, and it is very clear that there were no

11   threats made toward Ms. Rivera prior to her performing oral sex

12   on her 10-year-old brother, that she was aware that he was

13   uncomfortable, she was aware that it was tough for him, that he

14   was crying, and nevertheless she performed this conduct, and

15   once she was done, as the Court is aware, she was ready to do

16   it again.  And unlike the victim yesterday --

17          THE COURT:  You said that she said she was ready to do

18   it again in the chat?

19          MS. DELL:  Correct.

20          THE COURT:  We don't know that she was ready to do it

21   again.

22          MS. DELL:  Correct.

23          THE COURT:  Separate from that.

24          MS. DELL:  Correct.  She said something along the

25   lines of, "Honey, we'll make better videos for you in the

N9KCrivS

 1    future.  I'll talk to him."

 2              THE COURT:  Right.

 3              MS. DELL:  There was no evidence of that in

 4    yesterday's sentencing.

 5              The one other difference that I would point out is

 6    that yesterday's victim was an infant, and obviously that's

 7    extremely horrific.

 8              THE COURT:  I've been thinking a lot about that, the

 9    difference -- I mean, sexual abuse is sexual abuse of a child,

10    but I do think it is more culpable behavior to abuse a

11    10-year-old I think than to abuse a 1-year-old.  I haven't done

12    the research on this, but I think the chances of the memory

13    causing significant harmful effects are greater with a

14    10-year-old.  Is that the point you're making?

15              MS. DELL:  That was the point I was going to make,

16    that the 10-year-old will unfortunately have this memory

17    forever.  I hope it doesn't impact him going forward, but that

18    is another distinction between today's case and yesterday's

19    case.

20              And unless the Court has other questions for me, I

21    rest on our submission.

22              THE COURT:  Is there restitution and forfeiture at

23    issue in this case?

24              MS. DELL:  I don't believe there's forfeiture.  If we

25    didn't seek forfeiture at the time of the plea, we're not

N9KCrivS

1    seeking forfeiture now, and I don't think we did at the time of

2    the plea.

3            With respect to restitution, we've received no claims

4    of restitution from the victim.

5            THE COURT:  Okay.  I want to give Ms. Rivera a chance

6    to speak if she would like to.  You're not required to speak or

7    say anything, and of course I read the transcript of the guilty

8    plea allocution before the magistrate judge and I know it was

9    difficult, but anything you'd like to say, you're welcome to do

10   so now.

11           THE DEFENDANT:  Thank you.

12           Your Honor, I stand before you today with deepest

13   regrets from my actions.  On May 14, 2020, the behavior that I

14   engaged in is in no way a glimpse of my character.  To date, I

15   am still severely affected by my own actions, and that is by

16   far my worst consequence.

17           I have found it hard to leave my home or to allow

18   myself to be happy.  I often feel like broken goods, not worthy

19   of life beyond this terrible time.  I have found it impossible,

20   near impossible to place myself under another employer who will

21   see nothing past my ankle monitor as my previous employer did.

22           I live in fear of the image of what my life would be

23   like for 10 years on the registry for all of the world to see

24   and how I'll never feel normal again.  I robbed myself of

25   freedom, but I am not selfish, and I know I can handle that one

N9KCrivS

1    day at a time.  Throughout the two to three years that this

2    case has taken to get to this date, I have learned beyond

3    myself what my actions meant.

4            The pain I have come to know is in the realization

5    that no matter what I have suffered in these years and will in

6    the years to come, that I cannot escape acknowledging that my

7    actions have also impacted my family.  My mother who sits

8    behind me, whose suffering is equal to mine, my father,

9    relatives that I stay away from due to my own shame, my husband

10   and, most importantly, my brother Lewis.  In the sorrow, I have

11   found some gratitude that I can still be loved by those closest

12   to me.

13           Your Honor, I stand before you a broken young woman

14   trying to find her place in this world in piecing this all

15   together, learning to love myself, learning to be a better

16   daughter, a better wife, and a better sister, returning the

17   loyalty and the love to those who have stood by me in my

18   darkest days.  I take full responsibility for my actions that

19   have brought me before you today.  I stand before you begging

20   to be heard in desperate need of a second chance to fix my

21   life, enjoy working again, and growing as an individual, but

22   also to be better, not only for me, but for who those close to

23   me that I owe my life.

24           Thank you.

25           THE COURT:  Thank you.

N9KCrivS

1        Is there any reason sentence may not be imposed at

2   this time?

3        MS. DELL:  No, your Honor.

4        MR. JOYCE:  No.

5        THE COURT:  In preparing to sentence Ms. Rivera, I've

6   considered the presentence report, probation's recommendation,

7   and the written and oral statements of defense counsel and the

8   defendant and the government, as well as the letters submitted

9   in support of the defendant and the other information that's

10  been provided.

11        My decision is controlled by a law, Section 3553(a) of

12  Title 18, which requires me to consider several factors,

13  including the sentencing guidelines, but not only the

14  sentencing guidelines, and they are advisory.

15        Now, the guidelines in this case call for an extremely

16  long sentence, 20 years.  No one's arguing that the defendant

17  deserves a sentence of 20 years.  What really governs the

18  decision is the purposes of sentencing as well as the nature

19  and circumstances of the crime and the defendant's history and

20  characteristics.  The purposes are the need to reflect the

21  seriousness of the crime, to promote respect for the law, and

22  provide just punishment for the offense, and to afford adequate

23  deterrence to criminal conduct, both specific deterrence and

24  general deterrence, and finally to provide any training or

25  treatment toward rehabilitation.  I am also required to

N9KCrivS

consider unwarranted sentencing disparities, and of course I

sentenced the codefendant in the case yesterday.  I'm

ultimately required to impose a sentence that is sufficient but

not greater than necessary to comply with the purposes in the

statute.

I've been thinking a lot about this case, and this is

one of the hardest ones I've dealt with.  This is serious

criminal conduct, conduct that involved the sexual abuse of the

defendant's 10-year-old brother for money, not because she's a

pedophile, not because she had some tendencies in that

direction, because she was manipulated by a codefendant,

Mr. Roman, and she was willing to do it.  The codefendant

certainly played an important and manipulative role leading to

the defendant's decision to engage in the conduct, but

ultimately the defendant made the choice and was actually

willing to do it, to sexually abuse a 10-year-old minor, and

that is serious criminal conduct.

The defendant is 25 years old.  She was 22 at the time

of the criminal conduct.  She had no criminal history.  There

are mitigating factors there, including the fact that she faced

significant challenges growing up, including abuse at a young

age and an abusive relationship later, and these are mitigating

factors and risk factors.

As I said, I am persuaded by Dr. Cruger's report that

she's not a pedophile, she's not at high risk of reoffending.

1    I don't think this is a case where the public needs to be

2    protected from the defendant.  And I believe she's remorseful.

3    I also recognize that there are collateral effects of the

4    conviction, the sex offender registration, the felony

5    conviction, as well as pretrial restrictions on the defendant's

6    liberty during this fairly lengthy period since the defendant

7    was arrested.

8            However, to serve the purposes of just punishment and

9    respect for the law, I do not think I can justify a sentence

10   with no prison time.  I don't think a sentence of 20 years is

11   necessary or even a sentence of two years or even a sentence of

12   one year, but I think this is a case where some prison time is

13   necessary given the conduct, given the defendant's level of

14   culpability, given what happened here just to serve the purpose

15   of just punishment.

16           I know I sentenced Ms. Jaquez yesterday to time

17   served, but I think there are some differences in those cases.

18   One, she was 18 at the time.  She was mentally challenged.  She

19   was engaged in conduct with a 1-year-old versus a 10-year-old.

20   Significantly, there's a culpability difference because of the

21   difference in willingness to engage in the conduct, and I think

22   that's what really calls for some period of incarceration.

23           For those reasons, I do intend to sentence the

24   defendant to four months' imprisonment.  That's not a long

25   period of time, that's a huge variance below the guidelines,

1    and it reflects my view that the certainty of some punishment

2    is often more important than the length of imprisonment.  The

3    term will be followed by five years' supervised release with

4    the conditions that I will lay out.

5            Now I would like to ask counsel, do you have any legal

6    objection to the sentence as I've indicated it?

7            MR. JOYCE:  No legal objection, your Honor.

8            MS. DELL:  No, your Honor.

9            THE COURT:  Ms. Rivera, you are hereby sentenced to

10   four months in the custody of the Bureau of Prisons.  Following

11   release, you'll be placed on supervised release for a period of

12   five years with the following conditions:

13           You will not commit another federal, state, or local

14   crime.  You will not possess or use any illegal controlled

15   substance.  You will submit to one drug testing within 15 days

16   of placement on supervised release and at least two drug tests

17   thereafter as directed by probation.  You will cooperate in the

18   collection of DNA.

19           And the standard conditions are imposed with the

20   following special conditions:

21           First, the search condition.  You will submit your

22   person, any property, residence, vehicle, papers, computer,

23   other electronic communication, data storage devices, storage

24   media and effects to a search by a United States probation

25   officer and, if needed, with the assistance of law enforcement.

N9KCrivS

1    The search must be conducted where there's reasonable suspicion

2    concerning a violation of supervised release or unlawful

3    conduct by the defendant.  Failure to submit to a search may be

4    ground for revocation.  You will also participate in an

5    outpatient mental health treatment program approved by the

6    probation office.  You must continue to take any prescribed

7    medications unless otherwise instructed by the provider.

8            You shall undergo a sex specific evaluation and

9    participate in an outpatient sex offender treatment and/or

10   outpatient mental health treatment program approved by the

11   probation office as set forth in the presentence report.  You

12   shall abide by all rules, requirements, and conditions of the

13   sex offender treatment program, including submission to

14   polygraph testing and refraining from accessing websites,

15   chatrooms, messaging, or social networking sites to the extent

16   that the offender treatment program determines that such access

17   would be detrimental to treatment.

18           You shall comply with federal and state laws regarding

19   registration as a sex offender.

20           You are restricted from viewing, accessing, possessing

21   and/or downloading any sexually explicit material involving

22   minors, including those created by the method of morphing or

23   other image creation format.

24           You must not have deliberate contact with any child

25   under 18 years of age unless approved by the probation office.

N9KCrivS

1    You may not have deliberate contact with the victim in this

2    case unless approved by the probation office.

3         You'll report to the nearest probation office within

4    72 hours of release and you'll be supervised by the district of

5    residence.

6         I'm waiving a fine because I find you're not able to

7    pay a fine.  However, there's a $100 special assessment.  The

8    JVTA and AVAA assessments are waived.

9         You will surrender to the facility designated by the

10   Bureau of Prisons on November 6th, 2023 by 2 o'clock p.m.

11        I'm required to advise you of your right to appeal.

12        You do have the right to appeal from your conviction

13   and sentence except to the extent you've waived that right as

14   part of your plea agreement.  And if you can cannot pay the

15   costs to appeal, you may apply for leave to appeal without

16   payment of costs.  Any appeal must be filed within 14 days.

17        Are there any open counts or indictments?

18        MS. DELL:  Yes, your Honor.  The government moves to

19   dismiss them.

20        THE COURT:  Open counts and underlying indictments are

21   dismissed.

22        Is there anything further from the government?

23        MS. DELL:  No, your Honor.

24        THE COURT:  Is there anything further from the

25   defense?

SOUTHERN DISTRICT REPORTERS, P.C.
(212) 805-0300

N9KCrivS

1              MR. JOYCE:  No.

2              THE COURT:  Thank you.  We're adjourned.

3                              *  *  *