

LAW OFFICES OF
JACQUELINE E. CISTARO

325 Broadway · Suite 505 · New York, NY 10007 · 125 Half Mile Road · Suite 200 · Red Bank, NJ 07701
T: 646.253.0583 · F: 646.224.9618 · C: 732.642.0598 · E: JEC@cistarolawfirm.com
www.cistarolawfirm.com

November 7, 2023

***VIA ECF AND ELECTRONIC MAIL***
The Honorable J. Paul Oetken
United States District Court
Southern District of New York
40 Foley Square
New York, NY 10007

***Re: United States v. Gennie Harrison, 21 Cr. 190 (JPO)***

Your Honor:

Each of us is more than the worst thing we have ever done. We are human beings and we all have our own so-called "baggage" — our pasts that are chock-full of bad choices, mistakes, and regrets. The lessons we have learned and those we have ignored. But those things do not define us anymore than the good things we have done. They are part of who we are today, but they do not define our true self, being, or soul. No one is perfect.

Gennie Harrison's conduct is egregious. There is no excuse or justification for her behavior. Rather, we submit that her significant childhood trauma and medical diagnoses, coupled with her need and desire to care for her children and mentally ill and drug-addicted mother, led her to the place she is today.

While we acknowledge the seriousness of the charges against Ms. Harrison, we ask the Court to consider her personal and unique biological, psychological, and social factors—including her unstable childhood that

1



LAW OFFICES OF
JACQUELINE E. CISTARO

325 Broadway · Suite 505 · New York, NY 10007 · 125 Half Mile Road · Suite 200 · Red Bank, NJ 07701
T: 646.253.0583 · F: 646.224.9618 · C: 732.642.0598 · E: JEC@cistarolawfirm.com
www.cistarolawfirm.com

included trauma *in utero*; an abusive and subsequently absent father; a neglectful, mentally ill, and drug-addicted mother; long-term instability; abusive relationships; chronic illnesses; and other untreated traumas that we believe have significantly contributed to Ms. Harrison's misconduct in this case.   We respectfully request this Honorable Court consider all these factors in determining a sentence that is sufficient but not greater than necessary to satisfy the goals of the sentencing guidelines.

## I.    BRIEF PROCEDURAL HISTORY

On February 26, 2021, Gennie Harrison was arrested pursuant to a complaint charging sexual exploitation of a child in violation of 18 U.S.C § 2251(a)(e) and (2).  *See* Dkt. 1.  At the time of her arrest, she immediately waived her constitutional right to remain silent and confessed to her misconduct.

On March 18, 2021, Gennie Harrison consented to a waiver of indictment and was arraigned on an information.  *See* Dkts. 8 and 9.  Ms. Harrison agreed that a motion for bail was not in her best interest at that time.  She has remained in custody at the MDC because of a physical assault on her mother, safety of the defendant, no alternative residential housing solution, and pending criminal charges in Pennsylvania state court arising out of the same conduct in the case at bar.



— LAW OFFICES OF —
**JACQUELINE E. CISTARO**

325 Broadway · Suite 505 · New York, NY 10007 · 125 Half Mile Road · Suite 200 · Red Bank, NJ 07701
T: 646.253.0583 · F: 646.224.9618 · C: 732.642.0598 · E: JEC@cistarolawfirm.com
www.cistarolawfirm.com

_____

## II.    THE PLEA AGREEMENT

Pursuant to the written plea agreement dated April 13, 2023, Ms. Harrison accepted responsibility for her misconduct and pleaded guilty to possession of child pornography, in violation of 18 U.S.C. § 225(a)(5)(B), (b)(2), and (2), before Magistrate Judge James L. Cott.  Ms. Harrison's guilty plea was accepted by Your Honor's Court order, entered on May 25, 2023.  *See* Dkt. 276.

## III.    THE SENTENCING GUIDELINES

The advisory Guidelines range is the statutorily authorized maximum sentence of 240 months (20 years) to life.  *See* PSR ¶ 137, 138.  However, the Guidelines are merely advisory, and this Court "may not presume that the Guidelines range is reasonable," but rather "must make an individualized assessment based on the facts presented.  *Gall v. United States*, 552 U.S. 38, 50 (2007).

Gennie Harrison has no prior criminal history whatsoever.  According to the PSR and plea agreement, her criminal history calculation is zero, but the calculations place her in Category I.  *See* PSR ¶ 82.  Unfortunately, Ms. Harrison does not benefit from the amendment(s) to the United States Sentencing Guidelines effective on November 1, 2023.  *See* U.S.S.G. § 4C1.1(5).



LAW OFFICES OF
JACQUELINE E. CISTARO

325 Broadway · Suite 505 · New York, NY 10007 · 125 Half Mile Road · Suite 200 · Red Bank, NJ 07701
T: 646.253.0583 · F: 646.224.9618 · C: 732.642.0598 · E: JEC@cistarolawfirm.com
www.cistarolawfirm.com

**IV.     THE 18 USC § 3553(a)(1) FACTORS**

Gennie Harrison, 22 years old, has endured significant hardship in her life.  Each chapter of her life includes events and experiences that no child should have to go through.  Every traumatic event built upon previous untreated traumas, only compounding her lack of sense of safety, self- worth, and overall identity.  Sadly, she did not receive the love, support, and treatment that she deserved and desperately needed as a child, which affected her entire life thus far.  Gennie Harrison never felt safe and always doubted her ability to become something more than her struggles and tragedies.

**1.     HISTORY AND CHARACTERISTICS OF THE DEFENDANT**

In November 2000, Gennie Ivette Harrison was born in the Bronx, New York, to Julie Sanchez and George Harrison.  Ms. Harrison has two older half siblings, Cynthia Caban-Rivera and Carmelo Caban, who are seventeen and eighteen years older than Ms. Harrison, respectively.  Gennie's mother has suffered from drug addiction since she was a teenager and frequently used marijuana, crack cocaine, ecstasy, and pain pills.  She consumed narcotics while pregnant with Ms. Harrison and, at the very least, used an abundance of marijuana on a daily basis while pregnant.   Ms. Sanchez was also kicked in the stomach while pregnant with Gennie, which caused an amniotic tear



LAW OFFICES OF
## JACQUELINE E. CISTARO

325 Broadway · Suite 505 · New York, NY 10007 · 125 Half Mile Road · Suite 200 · Red Bank, NJ 07701
T: 646.253.0583 · F: 646.224.9618 · C: 732.642.0598 · E: JEC@cistarolawfirm.com
www.cistarolawfirm.com

and she leaked amniotic fluid for the rest of the pregnancy.   Ms. Sanchez was also physically abused by George Harrison throughout her entire relationship and pregnancy with Ms. Harrison.

███████████████████████████████████████████

███████████████████████████████████████████

███████████████████████████████████████████

███████████████████████████████████████████

████████████         However, her birth did not stop both of her parents' daily use of drugs and domestic violence.  Sadly, her older siblings lived in Pennsylvania and were not able to protect her as both siblings became emancipated by the time they were sixteen years old.  They too were physically abused by their drug addicted mother, Ms. Sanchez.

When Ms. Harrison was approximately eight months old, Ms. Sanchez could no longer endure the daily beatings at the hands of Gennie's father.  She left their home in the Bronx but only moved a short distance away to Morris Heights.  This relocation was not far enough.  There, she continued to use drugs to cope with her own pain and suffering.  Gennie Harrison was often neglected and uncared for.

---

███████████████████████████████ http://www.kidshealth.org/en/parents/premature-ventricular-contractions.html



LAW OFFICES OF
# JACQUELINE E. CISTARO

325 Broadway · Suite 505 · New York, NY 10007 · 125 Half Mile Road · Suite 200 · Red Bank, NJ 07701
T: 646.253.0583 · F: 646.224.9618 · C: 732.642.0598 · E: JEC@cistarolawfirm.com
www.cistarolawfirm.com

### A.    GENNIE HARRISON'S CHILDHOOD AND TEENAGE YEARS

In 2005, at 5 years old, Gennie Harrison began kindergarten at Public School 39 and started asking about her father.  Despite her better judgment, Ms. Sanchez reached out to Mr. Harrison and attempted to rekindle their relationship and family.  Unfortunately, many victims of Battered Woman Syndrome often return to their abusers time and time again.[2]  Shortly after Gennie's parents reunited, Mr. Harrison's abuse left off where it started and he began beating Gennie's mother again.  However, this time was different because Mr. Harrison physically assaulted Gennie when she tried to intervene to help her mother.  Enough was enough.  Ms. Sanchez finally found the courage to leave the state of New York.

Ms. Sanchez fled with Gennie Harrison to Allentown, Pennsylvania to be closer to her son, Carmelo, and daughter, Cynthia.  Ms. Sanchez and Gennie Harrison struggled while they moved from shelter to shelter before they finally were able to settle into a permanent home.  During that time, Gennie Harrison was enrolled in three different kindergarten schools and needed to repeat kindergarten numerous times because of all the moves.  Ms. Harrison reports this was an extremely difficult time.  Not only had she just witnessed years of

---

[2] *See* Battered Woman Syndrome, https://en.wikipedia.org/wiki/Battered_woman_syndrome.



LAW OFFICES OF
## JACQUELINE E. CISTARO

325 Broadway · Suite 505 · New York, NY 10007 · 125 Half Mile Road · Suite 200 · Red Bank, NJ 07701
T: 646.253.0583 · F: 646.224.9618 · C: 732.642.0598 ·E: JEC@cistarolawfirm.com
www.cistarolawfirm.com

domestic violence between her parents, but she was uprooted from her home, moved from domestic violence shelter to shelter, and school to school.  As a little girl—she was overwhelmed, confused, and absolutely terrified.

Gennie Harrison completed her kindergarten education at Lincoln Elementary school and was enrolled for a short period of time at McKinley Elementary School.  She continued her education at Francis D. Raub Middle School where she graduated the eighth grade.  At that time, Ms. Harrison was engaged in extracurricular activities, including basketball, soccer, school plays and various musical instruments.  She appeared to be thriving—but realistically was holding on by a thread.

Ms. Harrison's unstable and tragic childhood was only complicated by her mother's drug addiction, ███████████████████████████ ██████████████████████████████████████████ ████████████████ from domestic violence.   Gennie Harrison recalled one event in which her mother picked her up from school at Public School 39 and had ████████ in front of the school.  This was devastating to Gennie.  She was scared, confused, and felt completely helpless.  As her mother came to, Gennie was encouraged to get in the car and go home as if nothing ever happened.  From that day forward, Ms. Harrison's teachers frequently inquired about Ms.



LAW OFFICES OF
# JACQUELINE E. CISTARO

325 Broadway · Suite 505 · New York, NY 10007 · 125 Half Mile Road · Suite 200 · Red Bank, NJ 07701
T: 646.253.0583 · F: 646.224.9618 · C: 732.642.0598 · E: JEC@cistarolawfirm.com
www.cistarolawfirm.com

_____

Sanchez' health, however, Gennie was instructed by her mother to respond, "She's fine."  Gennie Harrison was required to keep her mother's secret life filled with drug addiction, health issues, and neglect from the outside world.

While Gennie Harrison did her best to manage the issues at home, she was also forced to become her mother's caretaker and the "adult" in the household.  Ms. Harrison was responsible for caring for her drug addicted mother who was often passed out or was otherwise unable to care for her child. Frequently, Ms. Sanchez was high on drugs and would forget to take her seizure medication, which would cause her to have seizures in the presence of Ms. Harrison.  Their home was often dirty and food was scarce.  Ms. Harrison witnessed this trauma throughout her entire childhood and teenage years.

Ms. Sanchez also created a dangerous home environment for Gennie because she frequently hosted drug-fueled parties that lasted all hours of the night – sometimes for days – and allowed acquaintances to stay in her home.

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████



LAW OFFICES OF
JACQUELINE E. CISTARO

325 Broadway · Suite 505 · New York, NY 10007 · 125 Half Mile Road · Suite 200 · Red Bank, NJ 07701
T: 646.253.0583 · F: 646.224.9618 · C: 732.642.0598 ·E: JEC@cistarolawfirm.com
www.cistarolawfirm.com

█████████████████████████████████████

████████████████████████████████████████

████████████████████████████████████████

████████████████████████████████████████

████████████████████████████████████████

████████████████████████████████████████

████████████████████████████████████████

████████████████████████████████████████

████████████████████████████████████████

████████████████████

During the summer after her eighth-grade year, Ms. Harrison met Robert Nunez and the two began a relationship.   "When we first met, he was so nice," she said.   Several months later, in November when Ms. Harrison was celebrating her birthday, she described "the first red flag," which she ignored at the time:  "He called but I didn't answer the phone because everyone was singing happy birthday and he got so mad."   As time went on, Mr. Nunez's angry outbursts and controlling tactics only increased and the relationship became physically and emotionally abusive.

Ms. Harrison continued with her education at William Allan High School



LAW OFFICES OF
## JACQUELINE E. CISTARO

325 Broadway · Suite 505 · New York, NY 10007 · 125 Half Mile Road · Suite 200 · Red Bank, NJ 07701
T: 646.253.0583 · F: 646.224.9618 · C: 732.642.0598 · E: JEC@cistarolawfirm.com
www.cistarolawfirm.com

beginning in the fall of 2015.   She was constantly bullied by a group of girls at the school because of her relationship with Mr. Nunez.  Ms. Harrison explained that he was cheating on her with one of the girls and they targeted her, likely trying to intimidate her until she left the relationship.   Not long after, in December 2015, at just fifteen years old, ███████████████████

███████████████   She continued at William Allan High School through February 2016, but left after she was pushed down the stairs at the school.  Gennie explained, "It happened because of a situation with my daughter's dad and the other girls."   At the same time, her relationship with Mr. Nunez continued to be abusive—physically and otherwise.   "We had a lot of arguments and he was always starting fights," she said.  "If I didn't have food ready—cooked and hot for him—he would start a fight."

Ms. Harrison's daughter, Zaniyah Nunez, was born on August 9, 2016, when Gennie was only fifteen years old. ██████████████████████

████████████████████████████████████████

████████████████████████████████████████

██████████████████████   Her boyfriend, and father of her daughter, wouldn't even escort her home from the hospital.   In fact, the couple had a huge fight in the hospital and he had to be removed by security.



LAW OFFICES OF
## JACQUELINE E. CISTARO

325 Broadway · Suite 505 · New York, NY 10007 · 125 Half Mile Road · Suite 200 · Red Bank, NJ 07701
T: 646.253.0583 · F: 646.224.9618 · C: 732.642.0598 ·E: JEC@cistarolawfirm.com
www.cistarolawfirm.com

Both Mr. Caban and Ms. Sanchez reported that Ms. Harrison doted on her son and was a loving mother. "She was a nurturing mom. She enjoyed being a mom," Mr. Caban said. Ms. Sanchez added that "Gennie took parenting so seriously. She didn't want to fail." ███████████

████████████████████████████████████████

████████████████████████████████████████

████████████████████████████████████████

███████████████

Around the time of her daughter's birth, Ms. Harrison reportedly grew increasingly interested in her own father. "She wanted to know him," Mr. Caban said. "Maybe it was because she was a parent now. But she started looking for him. She was taking trips to New York to try to connect with her dad—sometimes we didn't even know about it."

By mid-2017, Ms. Harrison obtained work at Magnum Management Corporation, where she worked for several months. Then, by the end of 2017, Ms. Harrison started working at NPC Quality Burgers, where she remained through the end of 2018. She also earned her GED and went to Lincoln Technical Institute to become a medical assistant. During that time, she began a relationship with Alexis Rivera, who she met through a family friend.



LAW OFFICES OF
JACQUELINE E. CISTARO

325 Broadway · Suite 505 · New York, NY 10007 · 125 Half Mile Road · Suite 200 · Red Bank, NJ 07701
T: 646.253.0583 · F: 646.224.9618 · C: 732.642.0598 · E: JEC@cistarolawfirm.com
www.cistarolawfirm.com

He was much older and already had four kids.

Like her previous relationship with Mr. Nunez, her relationship with Alexis Rivera started showing signs of control and abuse. Gennie was responsible for all the financial responsibilities. She admitted, "He would take all my money." And "He would get tickets all the time and make me pay."

Then, in December 2019, ███████████████████

███████████████████████████  ██████████████████

███████████████████████████████████████

███████████████████████████████████████

She was able, however, to keep working; records indicate that she was employed at Specialty Physician Associates from the second quarter of 2019 through the first quarter of 2020.

Then, in March 2020, much of the world shut down due to the coronavirus pandemic. As Ms. Harrison tried to navigate the pandemic; stay healthy and safe, ██████████████████; care for her daughter and mother; and remain financially afloat, she also contended with Mr. Rivera's continued abuse and infidelity. "He was always with other girls," Ms. Harrison said. "It was all a lot of stress on me." Because of the pandemic, Ms. Harrison left her job at Specialty Physician Associates but, as she needed a steady income,



LAW OFFICES OF
JACQUELINE E. CISTARO

325 Broadway · Suite 505 · New York, NY 10007 · 125 Half Mile Road · Suite 200 · Red Bank, NJ 07701
T: 646.253.0583 · F: 646.224.9618 · C: 732.642.0598 · E: JEC@cistarolawfirm.com
www.cistarolawfirm.com

started working at a convenience store. In June 2020, Ms. Harrison began working the night shift at Wawa. The schedule was grueling, especially as her pregnancy and the pandemic continued, without an end in sight. Every day, Gennie would walk to and from work as Mr. Rivera used her car and continued to accumulate traffic infractions and unpaid tickets. On August 8, 2020, a domestic violence report was filed and indicated that Ms. Harrison's ex-boyfriend, Robert, had been calling her and texting her since July 28, 2020, wherein he made threats, such as, "watch your back" and "lock your doors." Gennie was extremely frightened for her safety. It appears no legal action was taken other than the officer's instructions as to how ███████████ ████████████████████████, ███████ ██████████████████████ and never came back. Because of the pandemic, no one else in the family ████████████████ Ms. Harrison was alone, terrified, and ██████████████████████████ ██████ She was only nineteen years old. Her brother, Mr. Caban, says, "That's a hard memory for her."

████████████████████ but much worse, Gennie devel██████████████ ██████████████████████████████████



LAW OFFICES OF

# JACQUELINE E. CISTARO

325 Broadway · Suite 505 · New York, NY 10007 · 125 Half Mile Road · Suite 200 · Red Bank, NJ 07701
T: 646.253.0583 · F: 646.224.9618 · C: 732.642.0598 · E: JEC@cistarolawfirm.com
www.cistarolawfirm.com

████████████████████████████████████████████

████████████████

████████████ Ms. Harrison's relationship with Mr. Rivera continued to rapidly deteriorate. He accused her of being unfaithful and ████████████ "I was just so hurt by it all," Ms. Harrison said. Regardless, Ms. Harrison continued doing what she had always done her entire life: putting on a brave face and taking care of those around her. She continued to work at Wawa and took on overtime hours whenever they arose. It was around that time, between October 2020 and December 2020, Ms. Harrison engaged in the conduct that led to her arrest. Gennie began networking online for extra money and learned she could earn $600 for sending pictures of herself.

Those close to Ms. Harrison indicated that they saw a change in her in the months leading to her arrest. "It was like an overnight thing," her mother said. "She started smoking and drinking a lot and became very secretive, ████████████ and tired all the time. She didn't want to talk about her feelings." Mr. Caban added that his sister "was a different person, a different version of herself." Her behavior appeared erratic – ████████████ ████████████████████████████



LAW OFFICES OF
JACQUELINE E. CISTARO

325 Broadway · Suite 505 · New York, NY 10007 · 125 Half Mile Road · Suite 200 · Red Bank, NJ 07701
T: 646.253.0583 · F: 646.224.9618 · C: 732.642.0598 · E: JEC@cistarolawfirm.com
www.cistarolawfirm.com

---

**B.    EVALUATION BY DR. RICHARD B. KRUEGER**

███████████████████████████████████████████

███████████████████████████████████████████

███████████████████████████████████████████

██████████████████████

███████████████████

████████████████████████████████
████████████████████████████████
████████████████████████████████
████████████████████████████████
████████████████████████████████
████████████████████████████████
████████████████████████████████
████████████████████████████████
████████████████████████████████
████████████████████████████████

**C.    MENTAL HEALTH AND AND MEDICAL ISSUES**

███████████████████████████████████████████

███████████████████████████████████████████

---

███████████████████████████████████████████
███████████████████████████████████████████
████████████████████████



LAW OFFICES OF
# JACQUELINE E. CISTARO

325 Broadway · Suite 505 · New York, NY 10007 · 125 Half Mile Road · Suite 200 · Red Bank, NJ 07701
T: 646.253.0583 · F: 646.224.9618 · C: 732.642.0598 · E: JEC@cistarolawfirm.com
www.cistarolawfirm.com

---

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

██████████████

### D.     <u>**FAMILY LETTERS OF SUPPOT**</u>

This Court has received four (4)  letters in support of Gennie Harrison.[6] By all accounts, Gennie is a hard-working mother who has had a really hard childhood.

### E.     <u>**CERTIFICATIONS**</u>

Ms. Harrison has made great strides to grow as a young woman and mother.  She has succeeded in completing numerous classes and earned certifications over the past 995 days that she's been incarcerated.  [7]

---

[6] All letters are enclosed in the attachment labeled, "Letters in Support, as "Exhibit D."
[7] *See* Certifications attached as "Exhibit E."



**—— LAW OFFICES OF ——**
## JACQUELINE E. CISTARO

325 Broadway · Suite 505 · New York, NY 10007 · 125 Half Mile Road · Suite 200 · Red Bank, NJ 07701
T: 646.253.0583 · F: 646.224.9618 · C: 732.642.0598 · E: JEC@cistarolawfirm.com
www.cistarolawfirm.com

_____

2.    **Nature and Circumstances of the Offense**

At the time of the offense, Gennie Harrison was only 21 years old. A review of the discovery in this case is clearly indicative of a young, traumatized young woman who was lured into engaging in criminal acts by a sexual predator who then coerced and threatened her to engage in the sexual conduct with her children. We submit this is not the conduct of a young woman seeking to engage in child pornography and/or sexual acts with minors.

At the time of this offense, Gennie Harrison was working at Wawa convenience store, but she could barely make ends meet. Gennie began networking online to earn extra money to feed her children, care for her mentally ill and drug-addicted mother, and pay for her child's father's accumulated traffic violations and surcharges associated with her automobile.

The defendant agrees that there were numerous text message exchanges between Gennie Harrison and Johnny Roman. To provide context of the online relationship, we provide the following pertinent messages for the Court's review and consideration:

*** 

17



LAW OFFICES OF
JACQUELINE E. CISTARO

325 Broadway · Suite 505 · New York, NY 10007 · 125 Half Mile Road · Suite 200 · Red Bank, NJ 07701
T: 646.253.0583 · F: 646.224.9618 · C: 732.642.0598 ·E: JEC@cistarolawfirm.com
www.cistarolawfirm.com

[redacted]

[redacted]

[redacted]

[redacted]

[redacted]

[redacted]

[redacted]





LAW OFFICES OF
## JACQUELINE E. CISTARO

325 Broadway · Suite 505 · New York, NY 10007 · 125 Half Mile Road · Suite 200 · Red Bank, NJ 07701
T: 646.253.0583 · F: 646.224.9618 · C: 732.642.0598 · E: JEC@cistarolawfirm.com
www.cistarolawfirm.com

_____



***

It's evident from the text exchanges, Gennie was willing to participate in photographs and/or videos of herself, a decision made between adults, but this became much more over the course of two months. Thereafter, Mr. Roman began to threaten Ms. Harrison – a person she did not even know.

Further, the U.S. Probation Office supports our position that Ms. Harrison was the product of threats, coercion, manipulation, and states :



19



LAW OFFICES OF
JACQUELINE E. CISTARO

325 Broadway · Suite 505 · New York, NY 10007 · 125 Half Mile Road · Suite 200 · Red Bank, NJ 07701
T: 646.253.0583 · F: 646.224.9618 · C: 732.642.0598 · E: JEC@cistarolawfirm.com
www.cistarolawfirm.com

_____

*See* PSR, page 32, ¶ 3, entitled "Sentencing Recommendation."

## V.  <u>The 18 USC § 3553(a)(2) Factors</u>

This Court must also consider the factors listed in § 3553(a)(2) when imposing sentence.   Those factors are the need for the sentence to reflect the seriousness of the offense; to promote respect for the law; to provide just punishment; to provide deterrence; to protect the public from further crimes of the defendant; to provide the defendant with any needed rehabilitative programs; and where appropriate, to avoid sentencing disparity.

We respectfully request a sentence of time served.  Ms. Harrison also faces charges in Pennsylvania state court for the same conduct.  With regard to the first factor, the statutory sentence is 240 months to life.   Ms. Harrison has spent 995 days incarcerated under deplorable conditions at MDC.   A sentence of 995 days would properly reflect the seriousness of the offense conduct and promote respect for the law and would show the public that wrongful conduct is punished by significant incarceration.   The defense submits that 995 days of imprisonment is a significant sentence for a young woman who has no prior criminal history whatsoever.

Deterrence, both general and specific, is also well served by a sentence of time served.   General deterrence is satisfied because anyone contemplating



LAW OFFICES OF

**JACQUELINE E. CISTARO**

325 Broadway · Suite 505 · New York, NY 10007 · 125 Half Mile Road · Suite 200 · Red Bank, NJ 07701
T: 646.253.0583 · F: 646.224.9618 · C: 732.642.0598 · E: JEC@cistarolawfirm.com
www.cistarolawfirm.com

similar conduct will think twice if they are aware they could spend up to life in jail. Ms. Harrison is determined to not be a statistic; spending her life in and out of prison. Along these lines, the public will be well-protected by such a sentence as Ms. Harrison has been incarcerated for a significant amount of time.

### A.    SENTENCES OF CO-DEFENDANTS

The final factor to consider is sentencing disparity. To date, most of the defendants have pleaded guilty to the same violation of 18 U.S.C. § 2252A(a)(5)(B) and (b)(2). The following are the co-defendants' sentences by this Honorable Court:

1.    Mariah Jaquez was sentenced to time served followed by five years' supervised release. *See* Dkt. 335.

2.    Kaitlyn Rivera was sentenced to four months imprisonment followed by five years' supervised release. *See* Dkt. 336.

3.    Noelia Davila was sentenced to time served followed by five years' supervised release. *See* Dkt. 357.

4.    Marcella Dezarraga Ortiz was sentenced to time served followed by giver years' supervised release. *See* Dkt. 358.



LAW OFFICES OF
JACQUELINE E. CISTARO

325 Broadway · Suite 505 · New York, NY 10007 · 125 Half Mile Road · Suite 200 · Red Bank, NJ 07701
T: 646.253.0583 · F: 646.224.9618 · C: 732.642.0598 · E: JEC@cistarolawfirm.com
www.cistarolawfirm.com

5.     Amy Reyes was sentenced to time served with six months' of home confinement followed by five years' supervised release.  *See* Dkt. 359.

Based on these sentences, Gennie Harrison should receive a sentence of time served followed by five years of supervised release.  Each of the defendants sentenced to date has received a sentence significantly below their recommended guideline range.  Considering the sentences handed down thus far in this case, Ms. Harrison is certainly deserving of a sentence of that similarly situated to her co-defendants.   We submit that Gennie Harrison has already served a substantially significant amount of time—995 days—beyond the sentences of her co-defendants that are similarly situated in this case.  Accordingly, a sentence of time served is the appropriate sentence in light of the sentencing factors in 18 USC §3553.

## B.     MDC CONDITIONS & COVID

On February 22, 2021, Ms. Harrison was arrested for the instant matter in the Eastern District of Pennsylvania.   She has since been detained at the Metropolitan Detention Center (MDC) in Brooklyn, New York.   While in custody, Ms. Harrison has been subjected to harsh conditions due to the continued COVID-19 global health pandemic.

In determining an appropriate sentence, Your Honor is also asked to



LAW OFFICES OF
# JACQUELINE E. CISTARO

325 Broadway · Suite 505 · New York, NY 10007 · 125 Half Mile Road · Suite 200 · Red Bank, NJ 07701
T: 646.253.0583 · F: 646.224.9618 · C: 732.642.0598 · E: JEC@cistarolawfirm.com
www.cistarolawfirm.com

consider the abhorrent living conditions at the MDC—conditions that pre-date the coronavirus pandemic but have been horribly amplified by the MDC's incompetent handling of the spread of the virus among other atrocities.

In support of our position, we offer some of the district courts' explicit findings concerning the failures at MDC and MCC.    In *United States v. Daniel Gonzalez*, 18 Cr. 669, (JPO), this Honorable Court reasoned as follows:

> Now, the defendant has already served 24 months of detention and that really has been under conditions that have been extraordinarily harsh. Most of the time has been in lockdown conditions 23 hours a day, basically like solitary confinement with no access to visitors for most of that time, virtually limited programming. And I do believe that because it's been harsher than a usual period that it's more punitive, that it's essentially the equivalent of either time and a half or two times what would ordinarily be served. So I think having served 24 months is equivalent to having served three years. That's what I believe in terms of how punitive it's been and how harsh it's been. As defense counsel points out, he has already served the equivalent of 28 months if you factor in good-time credit.

(Transcript from the sentencing in *United State v. Daniel Gonzalez*, 18 Cr. 669 (JPO), S.D.N.Y., April 2, 2021, pp. 17-18. And in *United States v. Tiffany Days*, 19 Cr. 619 (CM), Judge MacMahon agreed with Your Honor and opined that "we should be providing some extra time for anybody who spent time in MCC or MDC during this lockdown," finding that the time



LAW OFFICES OF
JACQUELINE E. CISTARO

325 Broadway · Suite 505 · New York, NY 10007 · 125 Half Mile Road · Suite 200 · Red Bank, NJ 07701
T: 646.253.0583 · F: 646.224.9618 · C: 732.642.0598 · E: JEC@cistarolawfirm.com
www.cistarolawfirm.com

that the defendant spent at MCC was "nothing short of inhumane" and "worse than any time that anyone thought possible in the last 400 years in a federal jail in America."

Since the onset of the COVID-19 pandemic, other Courts in the Eastern and Southern Districts have reduced sentences based on the pandemic and unduly harsh pretrial conditions of detention at the MDC and MCC and have held that time spent at these facilities during COVID should count as 1.5 to 2 times the actual time served. *See e.g., United States v. Terrill Latney,* 18 Cr. 606 (JS)(E.D.N.Y. October 5, 2020) (downward variance from 360 months to life to 240 months for a violation of 18 U.S.C. § 1959, due in part to MDC conditions during the pandemic); *United States v. Juan Bravo-Mendez,* 18 Cr. 666 (DLI) (E.D.N.Y. August 28, 2020) (downward variance from 24 to 30 months to 18 months in an illegal re-entry case, taking into account the "difficult imprisonment conditions created by the COVID-19 Pandemic" during defendant's imprisonment at the MDC); *United States v. Americo Migliore,* 20 Cr. 131 (DRH) (E.D.N.Y. April 19, 2021) (downward variance from 57 to 71 to 40 months for a violation of 21 U.S.C. § 841 (b)(1)(C), due in part to MDC conditions during the pandemic); *United States v. Garland Battle,* 20 Cr. 349 (EK) (E.D.N.Y. April 22, 2021) (downward variance from 30 to 37



LAW OFFICES OF
**JACQUELINE E. CISTARO**

325 Broadway · Suite 505 · New York, NY 10007 · 125 Half Mile Road · Suite 200 · Red Bank, NJ 07701
T: 646.253.0583 · F: 646.224.9618 · C: 732.642.0598 ·E: JEC@cistarolawfirm.com
www.cistarolawfirm.com

months to 27 months for a violation of 18 U.S.C. § 922(g), noting in the Statement of Reasons that "the conditions of Mr. Battle's detention are harsher than usual, given the ongoing pandemic."); *United States v. Saul Colon*, 15 Cr. 317 (MKB) (E.D.N.Y. November 20, 2020) (downward variance from 100 to 125 months to 18 months for a violation of 21 U.S.C. § 841 (b)(1)(C), due in part to MDC conditions during the pandemic.); *United States v. Juan Carlos Aracena de Jesus*, 20 Cr. 19 (PAE) (S.D.N.Y. July 1, 2020) (substantial downward variance from 30 to 37 months to six months in part because of the "horrific conditions" at MCC during the pandemic); *United States v. Morgan*, 19 Cr. 209 (RMB)(S.D.N.Y. May 5, 2020) (cutting the sentence to less than half of the low end of the Guidelines based in part on conditions at MDC during the pandemic and condemning the conditions at MCC and MDC prior to the current crisis); *United States v. Dayss*, 19 Cr. 863 (VSB),(S.D.N.Y. May 4, 2020) (reducing the length of the sentence in part based on conditions at MCC during the COVID-19 crisis); and *United States v. Pierson*, 14 Cr. 855 (LTS) (S.D.N.Y. May 4, 2020) (same for defendant detained at MDC).



LAW OFFICES OF
# JACQUELINE E. CISTARO

325 Broadway · Suite 505 · New York, NY 10007 · 125 Half Mile Road · Suite 200 · Red Bank, NJ 07701
T: 646.253.0583 · F: 646.224.9618 · C: 732.642.0598 · E: JEC@cistarolawfirm.com
www.cistarolawfirm.com

**VI.    OBJECTIONS/COMMENTS/CORRECTIONS TO THE PSR**

The defendant objects to the following Proposed Special Conditions of Supervised Release:

1.    Outpatient drug treatment: Ms. Harrison admitted to using marijuana and alcohol while residing with her mother who encouraged Gennie to join her in the consumption of substances, however, Gennie has been sober for 995 days.  We respectfully request that Ms. Harrison undergo an initial drug screening and, if negative, suspend further drug testing and treatment.

2.    Outpatient sex offender treatment: as detailed above and throughout Dr. Krueger's evaluation report, Ms. Harrison is not a sexual predator, does not have a history of sexual misconduct with minors, nor does she meet the definition of pedophilia.  Thus, she does not require sex offender treatment.

3.    Installation of tracking software: given the brief and situational nature of Ms. Harrison's offense, coupled with the unreasonable invasion of Gennie's privacy, we respectfully submit that this software is unnecessary to assure the safety of the community.

4.    Contact with children unless approved by Probation: such a condition would be incredibly burdensome and punitive.  Rather, Ms. Harrison



LAW OFFICES OF
**JACQUELINE E. CISTARO**

325 Broadway · Suite 505 · New York, NY 10007 · 125 Half Mile Road · Suite 200 · Red Bank, NJ 07701
T: 646.253.0583 · F: 646.224.9618 · C: 732.642.0598 · E: JEC@cistarolawfirm.com
www.cistarolawfirm.com

should be required to follow ACS directives and allow ACS to determine which minors she may have contact with and in what manner.

5.    Contact with victims: whether Ms. Harrison may have contact with her children should be determined by ACS.

6.    Financial information: the defense objects to the requirement that Ms. Harrison provide access of her financial information to Probation as this case does not involve financial fraud or misappropriation of funds.

## VII.    RE-ENTRY PLAN TO SOCIETY

Gennie Harrison has the opportunity to become employed full-time in New York City.  Her uncle, Jose Sanchez, who submitted a letter in support of leniency also indicated that he has made a promise of employment to Ms. Harrison and, upon her release, will be employed by his company, Baldor Specialty Food, New York City, under his "watchful eye."

## VIII.    CONCLUSION

We respectfully request this Honorable Court consider all these factors in determining a sentence that is sufficient but not greater than necessary to satisfy the goals of the sentencing guidelines.

Respectfully submitted,

s/ Jacqueline E. Cistaro, Esq.