

**U.S. Department of Justice**

*United States Attorney*
*Southern District of New York*

---

*The Silvio J. Mollo Building*
*One Saint Andrew's Plaza*
*New York, New York 10007*

December 13, 2023

**BY ECF**
The Honorable J. Paul Oetken
United States District Judge
Southern District of New York
40 Foley Square
New York, New York 10007

     Re:   *United States v. Johnny Roman*, S12 21 Cr. 190 (JPO)

Dear Judge Oetken:

     The Government respectfully submits this letter in advance of the sentencing of defendant Johnny Roman, scheduled for December 18, 2023. For the reasons set forth below, the Government submits that a term of imprisonment of forty years is sufficient but not greater than necessary to serve the legitimate purposes of sentencing.

   A.   Factual Background

     **1. Overview of Roman's Relentless Recruitment of Women to Make Child Pornography**

     Johnny Roman is a relentless sexual predator. Since at least 2020, Roman has used multiple fake online personas to contact young women about the prospect of a "job" sexting with an older man on encrypted messaging applications and to manipulate the women into creating disturbing pornographic videos in which they perform oral sex on minors, many of them infants or toddlers. (PSR[1] ¶¶ 17-19).

     Roman's heinous conduct generally followed the same pattern. Roman began by broadly reaching out to women on Facebook and asking if they would like a job sending sexually explicit images and videos to a Kik user. Based on a review of just one Facebook user account Roman used, he communicated with at least three thousand different women. However, Roman did not use his own name for this outreach. Instead, he pretended to be a woman, often using the name "Ashley Banks." Using the Ashley persona, Roman tried to develop a friendly conversation with women in the hopes of building their trust. (PSR ¶¶ 17-19, 35).

---

[1] PSR refers to the presentence investigation report in this case, which was revised November 27, 2023. (Doc. No. 369).

At the same time the women were speaking with Ashley, they were also speaking with Roman through his Kik username Theboss12189 or through his online persona on another encrypted messaging application, such as WhatsApp or Telegram. During those conversations, Roman began by directing women to create sexually explicit videos or images of themselves. Roman then escalated his requests and asked for "personal" videos, "role play" videos or "naughty babysitter" videos. When the women asked for Roman to explain what he wanted from those requests, Roman directed them to contact the friendly Ashley persona. The Ashley persona then tried to normalize Roman's requests, explaining that she had previously made sexually explicit videos with her younger brother and, after they were paid, the younger brother got an Xbox. Roman then directed the women to create child pornography with minors. He gave specific directions, including to perform oral sex on the minors. His directions were graphic and often disregarded any care for the minors, even when the women told Roman that the minor was resistant or crying. Some women expressed reluctance to Ashley, who continued to try to normalize the behavior and encouraged the women to ask for more money based on Roman's graphic requests rather than abstain from further conduct. (*See, e.g.*, PSR ¶¶ 17, 26-29, 31-34, 45-54).

After the women filmed and sent Roman videos of them performing oral sex on minors, they often reached out to Ashley to find out when they would be paid. However, Roman had no intention of paying the women. And so, Roman, as Ashley, would tell the women that Roman was upset because they supposedly texted Roman while his wife was around. When the women complained that they would not be paid, Ashley explained that Roman would publicly release online the sexually explicit videos they had made unless the women continued to speak with Roman and make more videos. Some women stopped communicating with Roman at that point, while others, including co-defendants Noelia Davila and Gennie Harrison, unfortunately, continued to make sexually explicit videos at Roman's request. (*See, e.g.*, PSR ¶¶ 34-37, 43-44, 49).

On December 22, 2020, Roman was arrested in his home, and he has been detained since his arrest. As explained further below, Roman used at least three contraband cellphones to continue his horrific conduct while incarcerated. (PSR ¶¶ 25-30, 64).

2. **Roman Threatens Victim-1 into Creating Sexually Explicit Videos with Victim-2**

The Government's investigation into Roman began in or around July 22, 2020, after it had been informed that Victim-1 (███████████) had performed oral sex on Victim-2 (███████ ████████████ On or about July 22, 2020, Roman, like with many of his female co-defendants, used the Ashley persona to reach out to Victim-1 on Facebook to see if she wanted a job texting with Theboss12189 on Kik. After Victim-1 sent Roman sexually explicit videos of herself, Roman asked for "personal videos" and told Victim-1 to talk to Ashley about those videos. After speaking with Ashley, Victim-1 created videos of herself with Victim-2 present at Roman's direction, including playing with her breasts in front of Victim-2. (PSR ¶¶ 20-22; Exhibit A[2]).

Even in these initial videos, Roman learned that Victim-2 was uncomfortable with the conduct. However, Roman disregarded this concern and urged Victim-1 to continue. For example, Roman directed Victim-1 suck her "fingers like a cock" next to Victim-2. However, Victim-1

---

[2] Exhibit A is an excerpt of Roman's Kik conversation with Victim-1.

explained that Victim-2 is "really not cooperating" and "everytime I grab [Victim-2's] hand [Victim-2] starts screaming." Roman ignored this concern, stating, "Okay [Victim-2] isn't going to die. Just do it." When Victim-1 hesitated again because Victim-2 "was born with ▮▮▮▮▮▮▮▮," Roman said, "This is business. [Victim-2] looks happy." After making those initial videos, Roman than directed Victim-1 to kiss Victim-2's "private." Victim-1 refused. (PSR ¶¶ 20-22; Exhibit A).

After Victim-1's refusal, Ashley reached out to Victim-1 via text message. Specifically, Ashley told Victim-1 that she had heard that Roman complained that Victim-1 had wasted Roman's time. Ashley, again hoping to build trust with Victim-1, commiserated with Victim-1's situation, explaining that Roman "thinks cause he got money he can get w.e he wants" and she "fe[lt] bad cause I put you on and you ain't get paid." (Exhibit B[3]).

Shortly after, however, Roman, through Ashley, began to threaten Victim-1. Ashley explained that "one of the other girls wrote me and said [Roman] told her to post your videos because you wasted his time."[4] Victim-1 then begged Roman not to post her videos, and Roman said he would not as long as Victim-1 made Roman's requested videos, namely to "kiss, "lick," and "suck" Victim-2's privates. Victim-1 started to make the requested videos, but she resisted as Roman kept asking for more. Victim-1 said, "please im crying right now[.] don't do this to me please." Victim-1 told Roman his requests were "illegal" and amounted to "child pornography." Roman did not care, and he said, "you still used a minor to do videos so you will go to jail also." At the same time, Victim-1 continued to talk to Ashley and started to beg Ashley to tell the girl not to post the videos. Ashley explained, however, that the other girl was planning to do what she was told because she did not want Roman to fire her. Victim-1 said, "I thought me & you were becoming friends," and Ashley responded, "I still down to be friends just don't ask me to choose between my money and you." (Exhibits A & B).

In response to Roman's demands and threats, Victim-1 created (i) approximately 15 images and videos of her exposing and touching her breasts, (ii) approximately three videos of herself simulating sexual acts with Victim-2, and (iii) approximately 15 videos of Victim-1 performing oral sex on Victim-2. (PSR ¶ 23).

### 3. Roman Directs and Threatens His Female Co-Defendants to Film Themselves Sexually Abusing Minors

Using the same playbook, manipulation, pressure, and, in some cases, threats, between May 2020 and December 2020, Roman successfully convinced his female co-defendants to make child pornography with victims ranging from ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮. The chart below provides a summary of the images and videos created.

---

[3] Exhibit B is an excerpt of Ashley's conversation with Victim-1.
[4] Based on the Government's investigation, the Government believes that Victim-1, unlike Roman's female co-defendants, was threatened *before* she made sexually explicit videos with Victim-2.

| Co-Defendant's Name | Number of Images or Videos Created Performing Oral Sex on Minor | Age of Minor(s) |
|---|---|---|
| Kaitlyn Rivera | Four videos | |
| Mariah Jaquez | Seven videos | |
| Noelia Davila | Three videos; Four videos | |
| Marcella Dezarraga Ortiz | One image[5] | |
| Amy Reyes | Four videos | |
| Gennie Harrison | Six videos; One video[6] | |

(PSR ¶¶ 33, 36, 42, 44, 52, 60, 63).

Below is a summary of that conduct.

### a. Kaitlyn Rivera

On or about May 14, 2020, Roman, using a different online personal "Lisa," contacted Rivera about a sexting job. Roman eventually started talking to Rivera on WhatsApp. After Rivera sent initial videos of herself, Roman, using his familiar playbook, asked Rivera for "personal videos" with Victim-3, ▓▓▓▓▓▓▓▓▓▓▓. Rivera agreed, but said she needed to travel home first. (PSR ¶¶ 31-32).

Once home, Roman asked Rivera to have Victim-3 play with her breasts. In response, Rivera said that she was "[n]ot saying no . . . . Just don't wanna be direct w [Victim-3] . . . . I'm making a game out of it you know?" Roman next asked Rivera to have Victim-3 suck her breasts. Rivera attempted this, and said, Victim-3 is "not gonna do that love. [Victim-3] almost cried." Roman did not seem bothered and told Rivera to "convince [Victim-3] to help you." Rivera responded, "I'm really sorry it's tough for [Victim-3]." Despite Victim-3's obvious discomfort, Roman told Rivera, "you have to get [Victim-3] more involved." Rivera continued to comply with Roman's requests. Eventually, Roman asked Rivera to kiss Victim-3 "down below," and Rivera agreed, saying she "did it very gentle." Then Roman told Rivera to "suck it." During this conversation, Rivera sent Roman approximately 4 videos in which she performed oral sex on Victim-3. (PSR ¶¶ 31-33; Exhibit C[7]).

After Rivera made the videos, she requested payment via her CashApp. Roman never paid, but he said her page would go "public on Instagram" and that "if you want this to go away[,] you will have to do as I say." (PSR ¶ 34; Exhibit C). Rivera did not make any other videos.

---

[5] This image was recovered from Dezarraga Ortiz's phone and was sent by Roman, likely as a threat. The Government believes Dezarraga Ortiz made additional videos. (PSR ¶ 60).

[6] However, as detailed more fully below, Harrison is believed to have sent Roman dozens of videos, which were deleted.

[7] Exhibit C is a WhatsApp conversation between Kaitlyn Rivera and Roman.

At her sentencing, Rivera expressed described how this horrific incident has deeply impacted her life. Rivera stated: "I have found it hard to leave my home or to allow myself to be happy. I often feel like broken goods, not worthy of life beyond this terrible time. . . . The pain I have come to know is in the realization that no matter what I have suffered in these years and will in the years to come, that I cannot escape acknowledging that my actions have also impacted my family." (Doc. No. 355 at 13-14).

### b. Mariah Jaquez

On October 2, 2020, Roman, while using his Ashley persona, contacted Jaquez on Facebook and asked if she wanted a job. Jaquez stated yes, and Ashley gave Jaquez the information for Theboss12189 and told her that she could be paid $2,500 to be a "naughty babysitter." Jaquez then downloaded Kik messenger.[8] While Jaquez was talking to Roman on Kik, Jaquez and Ashley had a friendly conversation about messaging with Theboss12189 and other topics. For example, Jaquez asked Ashley whether she lived in the Bronx because Jaquez was looking for more friends. Jaquez also gave Ashley advice on where to get a tattoo and what "personal videos" were. (PSR ¶ 35).

While talking to Ashley, Jaquez made approximately seven videos of her performing oral sex on Victim-4, ▓▓▓▓▓▓▓▓▓▓▓▓. After making the videos, Jaquez asked Ashley how long it would take to be paid because she is owed $2,500. (PSR ¶ 36).

The next day, Jaquez still had not been paid so Jaquez followed up with Ashley. Ashley replied that Roman was mad because Jaquez texted while Roman's wife was around. Later that day, Roman, as Ashley, started to threaten Jaquez and stated that Roman wanted to post Jaquez's videos online. Jaquez begged Ashley to tell Roman not to post those videos because it would "ruin [her] life." (PSR ¶¶ 36-37).

Despite Jaquez's pleas for mercy, Roman's threats appeared to persist. Later that day, Jaquez filed a police report which stated that she was talking to someone on Kik who said that he would find where she lives and kill her and Victim-4. In addition, on or about October 8, 2020, Ashley contacted Jaquez again via text message and said, "This Ashley. Told you we was gonna make you go viral. . . . You have 2 mins to hit [Roman] up or we making your page public." Less than an hour later, Jaquez filed a second police report, in which she said that an unknown perpetrator made a threat about Victim-4. (PSR ¶¶ 38-39).

At her sentencing, Jaquez discussed how this incident has impacted her. Jaquez stated: "I'm sorry for what I did to [Victim-4]. I'm tired. . . . I need my life back. . . . I feel like I'm absolutely dying. . . . I have horrible dreams and just wake up crying, feeling the pain in my heart. . . . Since all this happened, I barely sleep. . . . all this feels like this is killing me slowly. . . . I know did something really wrong, and I'm sorry." (Doc. No. 348 at 23-24).

---

[8] Law enforcement did not recover Jaquez's conversation with Theboss12189. Jaquez deleted the messages from her phone, and the messages were not available on Roman's phone at the time of his arrest in December 2020.

Page 6

### c. Noelia Davila

On or about November 5, 2020, Roman, acting as Ashley on Facebook, contacted Davila and asked if she wanted a job texting someone. Davila did not respond that day, but on or about November 9, 2020, Davila contacted Ashley and said she was interested in the job. In response, Ashley told Davila to contact Theboss12189 on Kik messenger. During the course of the conversation, Ashley told Davila that Roman pays extra and the same day for personal videos. Ashley then asked Davila for her phone number so they could text. In response, Davila gave her cellphone number. (PSR ¶ 40).

After Davila gave Ashley her number, Ashley started to text her.[9] While texting, Davila asked Ashley about different things that Roman was asking her to do. For example, Davila asked about "role play" videos and "babysitting" videos. Ashley explained that she had made a video with her younger brother and he got an Xbox after making the video with her. Davila said she did not want to use Victim-6—███████████—in any videos. As a result, Davila initially told Ashley that Roman had fired her because she would not send a babysitting video with Victim-6. Ashley responded that Roman is "weird" and that Davila should request more money from Roman if he is asking for "weird shit and he [and] you both can get in trouble for it." Davila agreed, stating "[t]hat's why I told him to get me a apartment paid for plus 2500." (PSR ¶ 41; Exhibit D).

Later that day, Davila told Ashley, "Iigh I got a kid. Help meee. What do I do"? Ashley explained that every video is different, and Davila said that Roman initially asked for her to "talk dirty to him in one and breastfeed in another." Davila further asked, "what he means oral"? Ashley told Davila to ask Roman for clarification. In response to Roman's requests, Davila sent Roman approximately three videos in which she performed oral sex on Victim-5 (███████████). (PSR ¶¶ 41-42; Exhibit D).

After Davila made those videos, she asked Ashley how long it would take for her to be paid. Ashley told Davila not to write anymore because Roman "said his wife seen a message you sent." Later that same day, Roman's threats began. Davila told Ashley that Roman would not pay unless she sent a video with Victim-6. Ashley then stated that Roman told her to "expose" Davila online. After hearing those threats, Davila repeated that she was "scared" and that she just wanted to "fix" the situation. She stated that Roman "wants me to hurt [Victim-6]" and "I can't do this I can't put [Victim-6] in danger." Roman, however, as Ashley, ignored these concerns. Feeling compelled to "fix" the situation, Davila heeded Roman's requests. While making these videos, Davila told Ashley that she was hurting Victim-6, but Roman persisted in requesting videos. For example, Davila explained to Ashley that Roman wanted Davila to put Victim-6's hand in her mouth but that it would hurt Victim-6. Davila explained that Roman did not care and that he was just "telling me to do it." That day, in response to the threats, Davila sent Romans approximately four videos in which she performed oral sex on Victim-6. (PSR ¶¶ 43-44; Exhibit D.)

At her sentencing, Davila stated: "I know my actions were beyond very wrong, and I am sorry for what I have done. . . I am sorry to who I've hurt. . . . I am deeply ashamed of myself and my actions, and I'm facing my consequences each day." (Doc. No. 376 at 12-13). In addition, in

---

[9] The WhatsApp conversation is attached as Exhibit D.

a letter to the Court, Davila stated that she regretted endangering Victim-5 and Victim-6 and that she has suffered from depression since making the videos for Roman.  (PSR ¶ 71).

### d. Marcella Dezarraga Ortiz

On November 28, 2020, Dezarraga Ortiz was contacted by Roman, posing as Ashley, on Facebook.  Ashley asked if Dezarraga Ortiz needed a job and explained that she could get $600 every Friday for sexting her boss.  Dezarraga Ortiz said she was interested, and Ashley directed her to download Kik messenger and contact Theboss12189.  Shortly thereafter, Dezarraga Ortiz asked Ashley what "personal videos" were.  Ashley explained that Dezarraga Ortiz could be paid the same day if she made personal videos and that she had acted as a "naughty babysitter" in a personal video.  Dezarraga Ortiz said she was going to make a video.  Ashley then asked for Dezarraga Ortiz's phone number so they could text, and Dezarraga Ortiz complied.  (PSR ¶ 55).

Roman, acting as Ashley, then texted Dezarraga Ortiz, stating "It's Ashley!"  Dezarraga Ortiz stated that Roman had requested the "naughty babysitter" videos and said he would pay $4,000.  Ashley said she would have asked for more if she were using Victim-9, ▮▮▮▮▮▮▮▮.  Dezarraga Ortiz said he agreed to pay $8,000 for the videos.  A few minutes later, Dezarraga Ortiz said Roman was "asking for nasty weird shit."  Approximately 20 minutes later, Dezarraga Ortiz stated: "The shit he is asking me for is like I'm basically molesting [Victim-9] . . . . Lmfao girl the stuff he asking me to do is so bad."  (PSR ¶ 56).

Ashley and Dezarraga Ortiz then stopped talking for about an hour.  After that break, Dezarraga Ortiz asked when she would be paid.  Dezarraga Ortiz told Ashley that Roman had asked Ashley to bring Dezarraga Ortiz the money in person.  Ashley said she could not bring the money because she was not in town, so she suggested that "Mike" (who was actually Roman) come to Dezarraga Ortiz's house and pay her.  About an hour later, "Mike" texted Dezarraga Ortiz and told her that he would be at her home shortly.  "Mike" explained that Dezarraga Ortiz should come outside so she could count the money herself.  "Mike" ended up spending the night at Dezarraga Ortiz's home.  (PSR ¶¶ 57-75).

The next day, on November 29, 2020, Dezarraga Ortiz called her mother from Roman's home.  Dezarraga Ortiz was there with Victim-9.  Dezarraga Ortiz's mother then called the police to report that her daughter was being held against her will at Roman's home in Albany.  When the police arrived, they interviewed Dezarraga Ortiz, who explained her conversations with Ashley on Facebook.  Dezarraga Ortiz also stated that she connected with Roman on Kik and that she sent videos of herself to him.  Dezarraga Ortiz further explained that, when Roman came to her house under the ruse that he was Mike and was going to pay her for her videos, Roman threatened to kill Dezarraga Ortiz's boyfriend, told her to break up with the boyfriend,[10] and warned Dezarraga Ortiz

---

[10] Text messages between Dezarraga Ortiz and her boyfriend confirm this account.  On November 29, 2020, Dezarraga Ortiz told her boyfriend: (i) she and Victim-9 were "kidnapped," (ii) "I had to break uo with you to be okay," (iii) "I never cheated I just did a very stupid thing I should have listened to you," and (iv) "This guy told me I had to break up with you or he would put me in jail so I did them he took me and [Victim-9] now we're at the police station."  (PSR ¶ 59 n.2).

that she could go to jail. After Roman spent the night, Dezarraga Ortiz, and Victim-9 went to the mall and returned to Roman's home. (PSR ¶ 59).

Shortly after the police arrived at Roman's home, Roman, through Ashley, started to threaten Dezarraga Ortiz. Dezarraga Ortiz received a text message from Ashley, stating, "Yea he told us you tried to get him locked up mean while your the pedophile. . . . Are you sure you want to do this? You will be viral in an hour." Later that day, Ashley sent Dezarraga Ortiz a picture in which Dezarraga Ortiz was sucking the penis of Victim-9. This is the only image or video law enforcement has recovered of Dezarraga Ortiz and Victim-9. However, in a chat with someone on December 1, 2020 about what to do with Victim-9, Dezarraga Ortiz said, "I deleted it all[.] I don't want the cops going through it and see it." As a result, the Government believes that Dezarraga Ortiz made more videos with Victim-9 that were subsequently deleted. (PSR ¶ 60 & n.4).

At her sentencing, Dezarraga Ortiz recounted that this conduct "ruined [her] life." She further stated: "When I lost [Victim-9], it destroyed me. It emotionally and physically damaged me, but I have to take responsibility and look at myself and my mistakes. Going to therapy continues to help me very much but to know that I lost [Victim-9] because of me is pain that I will never go away. That's a lifetime consequence. On top of losing [Victim-9], I don't know if I will ever be able to get [Victim-9] back. I hope [Victim-9] is safe and loved and taken care of. I try every single day to move on with my life. I have a ten-month-old daughter. Because I what I did, I lost my daughter." (Doc. No. 379 at 17).

### e. Amy Reyes

On or about November 18, 2020, Roman, as Ashley, contacted Reyes via Facebook and asked Reyes if she wanted a job texting someone. Reyes said she was interested, and Ashley instructed Reyes to download Kik and contact Theboss12189. (PSR ¶ 61).

On or about December 5, 2020, Ashley contacted Reyes on Facebook to see if she was still interested in the job and directed Reyes to contact Theboss12189. Reyes then stated that Theboss12189 had asked her to ask Ashley about "personal videos." Ashley explained that Reyes could be paid the same day for "personal videos" and that Ashley had pretended to be a "naughty babysitter" for personal videos. That day, Ashley sent Roman approximately four videos in which she performed oral sex on Victim-10 (                    ). After sending the videos, Reyes asked Ashley when she would be paid. (PSR ¶¶ 62-63).

At her sentencing, Reyes stated how Roman's demands have impacted her life. She stated, "I am deeply ashamed and sorry for what I did. My conduct that day will haunt me for the rest of my life. All I've wanted since that moment is to be able to go back and change what I did, and I can't." (Doc. No. 380 at 11).

### f. Gennie Harrison

On or about October 22, 2020, Roman, acting as Ashley on Facebook, contacted Harrison and asked Harrison if she "need[ed] that job" because "he just fired a girl!" Ashley stated Harrison would get "$600 every Friday" to text someone. Harrison said she was interested. Ashley

instructed Harrison to download Kik and contact Theboss12189. After downloading Kik, Harrison told Ashley that Roman had instructed Harrison to ask Ashley about "personal videos." Ashley explained Harrison could be paid the same day if she made a personal video. Ashley further explained that she had pretended to be a "naughty babysitter" for her brother in a personal video. That day, Harrison sent Roman approximately 33 videos and 5 images. These videos were deleted. However, Harrison admitted in her post-arrest statement that the first videos she took were of her performing oral sex on Victim-7 (█████████████). (PSR ¶¶ 45-46).

That same day, Harrison asked Ashley how long it would take for Roman to send money. In response, Ashley said Roman was upset because Harrison had texted him while his wife was around. Then, Roman's threats started. Roman, as Ashley, explained that Roman would expose Harrison's images online. Harrison responded: "please help me if they post those they going to █████████████." (PSR ¶ 47).

Between October 2020 and December 2020, Roman continued to threaten Harrison over Kik, who responded to these threats by making videos with Victim-7 and Victim-8, █████████████, █████████████.[11] For example, on October 26, 2020, Roman told Harrison: "This will end very ugly for you today. 3 girls will post your stuff." That same day, Harrison explained that she had a difficult night with Victim-7's father who "choked" her and took her phone so she could not send any text messages. Harrison said, "I really don't want you to post that stuff." When Roman told Harrison that she needed to make videos with Victim-7 and Victim-8 so she could get her "payout," Harrison explained that she did not want to sexually abuse Victim-8 because Victim-8 was █████████████████████████████████ Harrison did not make videos that day. (PSR ¶¶ 48-49; Exhibit E).

However, several days later, on November 1, 2020, Roman continued to terrorize Harrison and said, "since you want to pretend like your not seeing notifications Enjoy fame." Roman directed Harrison to get Victim-8, and Harrison responded, "what do you want me to do so we can finish up[.] I'll do it[.] I don't want to because [Victim-8's] age but I have no choice so what's left to do." She further explained, "What else can I do I don't want them taking [Victim-7 and Victim-8] please I'm sorry I texted you and your wife saw please is there anything I can do now to get this to go [] away I'm having nightmares about it it's not even about the money anymore." Roman explained that he would "go away" when Harrison used Victim-8 in a video. While Roman waited for Harrison to make videos with Victim-8, Roman directed Harrison to make videos with Victim-7. Specifically, he said, "Let's see you stuffing that tit in [Victim-7's] mouth. . . . Let's see you wake [Victim-7] up with a smack. . . . Smack him awake. . . . Open hand." In response, Harrison asked, "You want me to smack a █████████████ and Roman said, "yes." Harrison said she did not want to slap Victim-7, so Roman directed her to "perform oral on [Victim-7]." That day, Harrison made six videos, and subsequently deleted them. (PSR ¶ 50; Exhibit E).

Four days later, on November 5, 2020, Roman messaged Harrison again, telling her it was "time." Roman demanded that Harrison get Victim-8 or "blow" Victim-7. Harrison said she would get Victim-7 because she just "want[ed] this to stop and go away." That day, she made 10 videos and deleted them. However, based on the context of the conversation, it appears Harrison

---

[11] Roman's Kik conversation with Harrison is attached as Exhibit E.

performed oral sex on Victim-7. For example, Roman directed her to "[s]uck [Victim-7] good." When Harrison asked why she was doing this, Roman said, "I'm horny and want you to submit to me." Harrison then asked, "what can I do to make this stop[.] I don't want to do this to [Victim-7] no more[.] it's not like I'm getting money." In response, Roman said, "You don't have a choice. You sold yourself out a while back." (PSR ¶ 51; Exhibit E).

On November 17, 2020, Roman directed Harrison to make more videos with Victim-8. Roman explained, "I want one video of you making [Victim-8] suck Your pretend cock. Put toy between your legs like a cock then make [Victim-8] suck it. . . . Treat [Victim-8] like a slut." Roman began giving more violent instructions, telling Harrison: "I want to see you make [Victim-8] gag a lil. Be more aggressive. . . . Make [Victim-8] gag." Harrison acquiesced, and stated, "Okay [Victim-8] threw up[.] want anymore[?]." Roman responded, "Yes one more of [Victim-8] gagging." That day, among the over twenty videos Harrison sent Roman, she sent Roman at least one video of Victim-8 sucking a dildo in Harrison's crotch. Roman also directed her to have Victim-8 suck Harrison's breasts. After Harrison was done, Roman said he would "release [Harrison] from [his] custody." (PSR ¶ 52; Exhibit E).

However, Roman contacted Harrison the following month on Kik. On December 18, 2020, Roman contacted Harrison and said: "Part 2." In response, Harrison said: "Please no thank you boss we going through a tough time right now and I'm not showing or doing anything with [Victim-7 and Victim-8]." Roman responded: "I'm sure a payment can help." Harrison stated: "Yeah but like I said I'm not using [Victim-7 and Victim-8] . . . . Boss with all do respect I don't want to use [Victim-7 and Victim-8] ever again and I know how you like your stuff and I'm always very busy idk if this will work out with the responsding back in time and I don't want you to expose me I don't want to feel scared anymore." Roman responded: "Then do as I say. You know how this goes. Only you following directions can help you. This time there will be money sent." Harrison resisted. She stated she "hate[s] this so much" and she did not want to use Victim-8. In response, Roman told her to use Victim-7. That same day, Roman said: "You know what I like to see. . . . Put [Victim-7] naked on bed then perform good oral." That day, Harrison sent Roman approximately 6 videos in which she performed oral sex on Victim-7. Roman was arrested five days later. (PSR ¶¶ 53-54).

At her sentencing, Harrison expressed remorse for her conduct and the harm she caused to her mother, Victim-7, and Victim-8. (Nov. 21, 2023 Sent. Tr. at 10).

### 4. Roman's Arrest

Roman was arrested on December 22, 2020 in his home. During his arrest and a judicially approved search of his home, law enforcement seized a phone from Roman which contained, among other things, the Ashley Facebook account and the Kik Theboss12189 account. (PSR ¶ 24).

### 5. Roman Continues His Predatory Behavior While Incarcerated

Despite being detained on the pending charges following his arrest, Roman was undeterred and continued his abhorrent conduct from prison. As described below, he obtained at least three contraband cellphones, and, using his same abusive playbook, he used the contraband phones to solicit more child pornography. (PSR ¶¶ 8, 25).

### a. February 16, 2022 Seizure

On February 16, 2022, the National Center for Missing & Exploited Children received a report from an adult female ("CC-7") that "Linda Rodriguez" had contacted CC-7 on Facebook and said that she could make money by speaking with a man on Telegram named "Rich Crithfield." CC-7 consented to the search of her phone. The phone contained chats with CC-7 that followed the same pattern of chats that Roman had with Victim-1 and his female co-defendants. Law enforcement also discovered seven videos on CC-7's phone in which CC-7 had performed oral sex on her Victim-11, ▮▮▮▮▮▮▮▮▮▮. (PSR ¶ 26).

That same day, employees of the MDC searched Roman's cell and recovered a contraband cellphone ("Roman Contraband Cellphone-1"). While law enforcement did not find conversations with CC-7 (likely because Roman deleted them), it did find: (i) videos of naked CC-7, (ii) the Facebook user Linda Rodriguez that had contacted CC-7; (iii) the Telegram user Rich Crithfield that had contacted CC-7, and (iv) approximately eight or nine images of additional child pornography, including images that appear to be someone performing oral sex on a one- or two-year-old minor. (PSR ¶ 27).

### b. The December 12, 2022 Seizure

Following the search and seizure of Roman Contraband Cellphone-1, the Government informed defense counsel that it had learned that Roman was continuing to solicit child pornography from prison, including through discovery productions. However, Roman was again undeterred.

On or about December 12, 2022, Roman got in a fight with other inmates while in possession of a contraband cellphone. According to Roman's medical records, Roman suffered abrasions and superficial lacerations. (Exhibit F).

Following the fight, employees of the MDC seized another contraband cellphone from Roman ("Roman Contraband Cellphone-2"). Law enforcement searched Roman Contraband Cellphone-2 and found, among other things: (i) the user account for Facebook user "Jess Rivera," (ii) the user account for Telegram user "Rich Crithfield," (iii) Telegram chats with "Rich Crithfield" and women in which the women said "Jess" had referred them and Crithfield asked for personal videos, and (iv) approximately seven videos of women performing oral sex on minor children around the ages of one or two years old. (PSR ¶ 28).

### c. The April 7, 2023 Seizure

The second seizure also did not deter Roman. On or about April 7, 2023, employees of the MDC seized a third contraband cellphone from Roman's cell ("Roman Contraband Cellphone-3"). Law enforcement searched Roman Contraband Cellphone-3 and found, among other things: (i) the user account for Facebook user "Jess Rivera," as well as conversations with that user, (ii) the user account for Telegram user "Richard," and (iii) approximately 70 files that contain child pornography, including at least some images of a woman performing oral sex on a toddler. In addition, a search of the content of Roman Contraband Cellphone-3 shows that there are several

mentions of "naughty babysitter," which is a phrase that was commonly used in conversations with Ashley and Theboss12189.  (PSR ¶ 29).[12]

### d. Other Infractions

While incarcerated, Roman sustained two incidents on his disciplinary record.  On or about December 12, 2022, he was found in possession of a "hazardous tool" and for engaging in a fight.  On May 4, 2023, he refused to obey an order.  (Exhibit G).

### B.   Procedural History and Guidelines Calculation

On December 22, 2020, Roman was arrested on a complaint, which charged him with two counts of sexual exploitation of a child, based on Roman's direction of Victim-1 and Jaquez to make sexually explicit videos with minors, and one count of extortionate communications, based on the threats Roman made to, among others, Victim-1.  On March 23, 2021, a grand jury in this District returned Indictment S1 21 Cr. 190 (JPO), which charged Roman with three counts of sexual exploitation of a child, based on Roman's direction of Rivera, Victim-1, and Jaquez to make sexually explicit videos with minors, and one count of extortionate communications.

On May 23, 2023, the Government filed Superseding Information S12 21 Cr. 190 (JPO), which charged Roman with one count of sexual exploitation of a child, in violation of 18 U.S.C. §§ 2251(a) and (e), based on his conduct with Victim-1, and two counts of conspiracy to commit sexual exploitation of a child, based on his conduct with Rivera and Jaquez, in violation of 18 U.S.C. § 371.  That same day, Roman pled guilty pursuant to a plea agreement dated April 18, 2023 (the "Plea Agreement").

In the Plea Agreement, the parties stipulated to a Guidelines sentence of 40 years' imprisonment (the statutory maximum term of imprisonment, because the applicable Guidelines sentence would otherwise be life).  The Plea Agreement calculated an offense level is 43 (which had been lowered from 49 because 43 is the highest possible offense level) and assessed Roman to have seven criminal history points and to therefore be in in Criminal History Category IV.  The defendant's Criminal History Category is based on five prior convictions.  The prior convictions include a violent 2010 conviction for attempted hate crime/assault in the second degree.  Specifically, Roman punched the victim in the face, thereby breaking the victim's nose, slammed the victim's head to the ground, and stomped on the victim's back with his boots.  Roman was sentenced to four years' imprisonment for this crime.  In addition, also in 2010, Roman was convicted of criminal possession of weapon in the third degree, specifically, a firearm.  During the arrest for that conviction, he resisted the arrest and kicked and punched an officer.  He was sentenced to 30 months to five years' imprisonment to run concurrent with his other 2010 conviction.  (PSR ¶¶ 124-25).  As part of the Plea Agreement, Roman did not contest that, at his

---

[12] Roman Contraband Cellphone-3 also contains certain indications that the cellphone may have been previously used by another inmate as there are money transfers that pertain to another inmate.  Nevertheless, the Government believes that Roman was the user of Roman Contraband Cellphone-3 based on the contents of the phone and the fact that it was found in Roman's cell.  (PSR ¶ 30).

request and direction, Davila, ("CC-3"), Harrison ("CC-4"), Dezarraga Ortiz ("CC-5"), and Reyes ("CC-6") filmed themselves performing oral sex on minors and transmitted those videos to Roman.

The Probation Office agrees that the Stipulated Guidelines Sentence is correct,[13] and it recommends a sentence of 240 months' imprisonment. The defense requests the mandatory minimum sentence of 15 years' imprisonment.

### C. Discussion

#### 1. Applicable Law

The Guidelines are "the product of careful study based on extensive empirical evidence derived from the review of thousands of individual sentencing decisions," *Gall v. United States*, 552 U.S. 38, 46 (2007), and district courts are required to treat them as the "starting point and the initial benchmark" in sentencing proceedings. *Id.* at 49.

After calculating the Guidelines, the Court must consider seven factors: (1) "the nature and circumstances of the offense and the history and characteristics of the defendant," (2) the purposes of sentencing discussed in the next paragraph, (3) "the kinds of sentences available," (4) the Guidelines range itself, (5) any relevant policy statements by the Sentencing Commission, (6) "the need to avoid unwarranted sentence disparities among defendants," and (7) "the need to provide restitution to any victims." 18 U.S.C. § 3553(a)(1)-(7); *see also Gall*, 552 U.S. at 49-50 & n.6.

In determining the appropriate sentence, Section 3553(a) directs judges to "impose a sentence sufficient, but not greater than necessary, to comply with the purposes" of sentencing, which are:

(A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;
(B) to afford adequate deterrence for criminal conduct;
(C) to protect the public from further crimes of the defendant; and
(D) to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner.

18 U.S.C. § 3553(a)(2).

Although the Court may not presume the reasonableness of a within-Guidelines sentence, the Second Circuit has recognized that "[i]n the overwhelming majority of cases, a Guidelines sentence will fall comfortably within the broad range of sentences that would be reasonable in the particular circumstances." *United States v. Fernandez*, 443 F.3d 19, 27 (2d Cir. 2006); *see also Kimbrough v. United States*, 552 U.S. 85, 108-09 (2007) ("We have accordingly recognized that,

---

[13] The Probation Office found the offense level to be 50, as opposed to 49, before it was lowered to 43. The Probation Office also found that Roman had one additional criminal history point because he was on parole at the time of the instant offense. However, as the Probation Office acknowledges, this does not change the Stipulated Guidelines Sentence. (PSR ¶ 169).

in the ordinary case, the Commission's recommendation of a sentencing range will reflect a rough approximation of sentences that might achieve § 3553(a)'s objectives." (quotations omitted)).

### 2. A Sentence of Forty Years' Imprisonment Is Appropriate in this Case

For at least three years, Roman engaged in a relentless scheme to convince young women to make abhorrent videos in which they performed oral sex on minors, many of them infants and toddlers. He also continued his conduct while incarcerated, reflecting a total lack of respect for the law or any remorse for his conduct. For the reasons discussed below, the Government submits that the Probation Office's recommendation seriously misses the mark in this case, in which the Guidelines would have recommended life imprisonment but for the statutory maximum to which the Government agreed in the Plea Agreement. The Stipulated Guidelines Sentence of 40 years' imprisonment is absolutely necessary to achieve the goals of sentencing.

#### a. The Stipulated Guidelines Sentence Is Necessary to Reflect the Seriousness of the Offense and the Need to Provide Just Punishment

Forty years of imprisonment is necessary in light of the seriousness of the offense and the need to provide just punishment. Roman's conduct was serious in several ways.

*First*, the breadth and scale of Roman's horrific scheme is staggering. Over the course of at least three years, Roman used multiple online personas to direct, manipulate, pressure, and, in some cases, threaten young women to make videos in which they performed oral sex on minors. Using the online Facebook persona "Ashley," Roman communicated with at least *three thousand different women*. However, the number of women Roman reached is likely much more than that as the Government's investigation has revealed that Roman used at least three other different online personas to recruit willing women—"Lisa," "Linda Rodriguez," and "Jess Rivera." It appears that the solicitation of women was Roman's fulltime job. According to Roman, unless he was spending time with his daughter, he was contacting women online. (Def. Sub. Ex. B at 9). Through this broad outreach, the Government has identified at least eight individuals—Victim-1, Roman's six female co-defendants, and CC-7—who, at Roman's request, performed oral sex on minor victims. At least 11 minor victims—ranging from 16 years old to four months old—were involved in Roman's criminal conduct. Based on Roman's requests, the individuals sent Roman dozens of videos, including at least 50 videos in which the individuals performed oral sex on minors. However, given Roman's expansive solicitation, the number of perpetrators and, therefore, the number of victims and amount of child pornography created, are likely much higher. The staggering nature of Roman's harm thus deserves a lengthy sentence.

*Second*, Roman's conduct was complex and manipulative. Roman's conversations with the female co-defendants and Victim-1 make clear that he knew that asking women to perform oral sex on minors was illegal. For example, when Victim-1 told Roman that his requests were "illegal" and "child pornography," Roman did not care, and he said, "you still used a minor to do videos so you will go to jail also." (Exhibit B). Because Roman knew that his requests were illegal, he also knew that he had to create an elaborate scheme in order to convince women to perform oral sex on minors. In other words, he knew he would not be successful if he used his own name to contact women on Facebook and ask them to perform oral sex on ███████ ███████. Instead, he used an online persona—often "Ashley"—to contact women and try to develop a friendly relationship with the women. He was convincing. He pretended to be their

friend by, among other things, offering advice on where to get tattoos, recommending how to negotiate with Roman for more money, and commiserating with the women when Roman started to ask for more explicit material. Victim-1 even told Ashley that she thought they had become friends. (Exhibit A). Once the trusting relationship was established, Roman, under the guise of as Theboss12189 on Kik, Rich Crithfield on Telegram, or another name on WhatApp, started asking for role play, naughty babysitter, or personal videos. Ashley normalized these requests, claiming she had made similar videos before, which made the women feel more comfortable to make their own videos. The complex scheme and the lengths that Roman went to pressure and manipulate Victim-1 and his female co-defendants requires a significant punishment.

*Third*, Roman's repeated threats are yet another reason why his conduct was extremely serious and worthy of a substantial term of imprisonment. Even after women sent Roman sexually explicit videos of themselves and minor children, Roman was not satisfied. He needed more, and he often used threats to get what he wanted. He threatened to post online the images that his female co-defendants had already sent him. He knew making such threats would be powerfully coercive because those videos contained ███████████████████████████████ and, therefore, could cause the women to go to jail and, in some cases, lose ████████████. In some cases, he also threatened physical harm. For example, after Roman's threats, Jaquez filed a police report in which she said that Roman would find out where she lives and kill her and Victim-4. (PSR ¶ 38). Similarly, when Roman, as "Mike," went to Dezarraga Ortiz's apartment, he threatened to kill her boyfriend, thus making it impossible for her to tell Roman to leave her home. (PSR ¶ 59). While the Government has no evidence that Roman physically harmed Victim-1 or the female co-defendants, his prior 2010 convictions indicate that he has violent tendencies.

*Fourth*, Roman caused immeasurable harm to Victim-1, the female co-defendants, and his other victims. As an initial matter, it may be impossible to permanently delete the child abuse of each of the minor victims that were recorded and transmitted online. In addition, through his conversations with Victim-1 and his female co-defendants, Roman exhibited a complete disregard of the wellbeing of his minor victims. Victim-1 and his female co-defendants repeatedly told Roman that they were hurting the victims, but Roman did not care. He insisted that that the women continue. For example, after Victim-1 tried to make videos with Victim-2, Victim-1 told Roman that Victim-2 was "not cooperating," "screaming," and had ██████████. Roman ignored this concern, simply stating, "This is business." (PSR ¶¶ 20-22; Exhibit A). Roman also told Rivera to continue making videos with Victim-3 even after she had told him that Victim-3 "almost cried." (PSR ¶¶ 31-33; Exhibit C). Roman's demands to Harrison are particularly disturbing. Roman told Harrison to smack Victim-7 and to "be aggressive" with Victim-8 and make Victim-8 gag. After Harrison told Roman that Victim-8 had thrown up from Roman's requests, Roman insisted on "one more [video] of [Victim-8] gagging." (Exhibit E). Such heinous conduct on victims that are ████████████████ deserve a substantial term of imprisonment.

Roman also caused extraordinary harm to his female co-defendants. Each woman expressed extreme remorse at their sentencings and how their conduct with Roman has gravely impacted their lives and the lives of their families forever. Each of the women ████████████████████████████████████████████████████████████████████████ Roman knew he was causing this harm through his chats with his female co-defendants and the fact that many of them begged him and Ashley to stop the threats. For example, after Roman threatened Victim-

1, Victim-1 stated "please im crying right now[.] don't do this to me please." (Exhibit B). But Roman ignored their pleas for mercy.

Roman claims that only after "review[ing]" the "victim accounts in his case" did he have a "reckoning" where he learned of the harm he had done, including that he had broken up families. (Def. Sub. Ex. A. at 12). However, as described above, through his own conversations with the female co-defendants, Roman knew he the harm he was causing. He just did not care.

*Finally*, as the Second Circuit has acknowledged, child pornography production offenses are "extremely serious" and deserving of a serious punishment. *United States v. Muzio*, 966 F.3d 61, 65 (2d Cir. 2020). They involve child abuse and create a permanent record of such child abuse. *Id.* (discussing *Paroline v. United States*, 572 U.S. 434, (2014)). In light of the serious nature of this conduct, the Second Circuit has regularly affirmed significant sentences in production of child pornography cases. *See, e.g.*, *Muzio*, 966 F.3d at 64 (affirming a sentence of 35 years of imprisonment for defendant who solicited child pornography from at least 14 underage girls and noting that the defendant's conduct was "abhorrent, notable for both the number of victims and the lengths he went to manipulate them"); *United States v. Close*, No. 21-1962, 2022 WL 17086495, at *3 (2d Cir. Nov. 21, 2022) (affirming 50-year sentence for defendant who filmed the genitals of 61 minor victims, including victims as young as four years old, who were changing in the school bathroom, and inappropriately touched 9 children); *United States v. Rafferty*, 529 F. App'x 10, 13 (2d Cir. 2013) (affirming 60-year sentence for defendant who videotaped a nine-year-old girl engage in sexually explicit conduct, including with a woman who suffered from a mental defect).

### b. The Stipulated Guidelines Sentence Is Necessary for Specific and General Deterrence and to Promote Respect for the Law

No less than forty years of imprisonment is also necessary to achieve the goals of specific and general deterrence and to promote respect for the law. To begin, this is not the defendant's first conviction. He has five prior convictions, including two which involved violent incidents for which he served several years in prison. Despite this prior term of imprisonment, Roman was not deterred from engaging in further criminal conduct and disregard of the law. Shortly after he was released from prison, he began selling drugs to support himself. (Def. Sub. Ex. B at 8). In or around 2014, when his parole officer asked him to report to the office, Roman, fearing that he might be rearrested for continuing to engage in illegal conduct, "went on the run." (*Id.*). From 2015 through his arrest in the instant case in 2020, Roman moved to Albany and evaded authorities. (*Id.*).

While Roman claims that he has "taken great strides since his arrest," (Def. Sub. Ex. A at 13), his post-arrest conduct flatly belies that self-serving claim. It is clear that his arrest in the instant case has had no further deterrent on his conduct. As discussed above, during his detention, Roman possessed at least three contraband cellphones, and each cellphone showed that Roman continued his persistent predatory behavior from jail under the guise of different online personas. In February 2022, using the name "Linda Rodriguez," as opposed to Ashely, Roman recruited CC-7 to perform oral sex on Victim-11 and send those videos to "Rich Crithfield" on Telegram, rather than Theboss12189 on Kik. Less than a year later, Roman appeared to use the new online persona "Jess Rivera" to solicit the creation of at least seven videos of women performing oral sex on

minors for Crithfield. Once again, several months after that, Roman continued to use the Jess Rivera persona to solicit even more child pornography. The fact that Roman continued to solicit child pornography from jail demonstrates that there is an extremely serious need for specific deterrence in this case. The maximum sentence available is necessary to deter Roman from future criminal conduct.

Finally, even after pleading guilty, Roman appears to have downplayed his culpability. Indeed, his sister reported to the Probation Office that Roman had told her that another person had planted the child pornography on Roman's phone. (PSR ¶ 146). Roman also lied to the Probation Office through his false claims that he never made threats. (PSR ¶ 153(a)). Roman's failure to accept the scale and severity of his conduct creates a further need for a substantial sentence that will deter Roman from future conduct.

A substantial period of punishment is also necessary for general deterrence. The requested sentence will send a powerful message of deterrence to all others who prey, as Roman did, on the most defenseless and vulnerable members of our community—our children. It will also send a clear message that where, as here, a defendant repeatedly continues his horrific conduct from jail, the defendant will receive the maximum sentence under the law.

### c. The Stipulated Guidelines Sentence Is Necessary to Protect the Public from Further Crimes of Roman

A sentence of forty years' imprisonment is also necessary to protect the public from further crimes, including further solicitation of child pornography, from the defendant. As discussed above, in 2020, Roman relentlessly contacted women online to solicit child pornography. As Roman even admits, it was essentially his fulltime job. (Def. Sub. Ex. B at 9). Unfortunately, once he was arrested and detained in December 2020, Roman continued his conduct through this year by soliciting even more child pornography using contraband cellphones from jail. The fact that Roman continued to engage in the same criminal conduct from jail speaks volumes concerning the extent of his dangerousness, his inability to control his sexual appetite for children, and his disregard for the law. Put simply, Roman is a continued danger to the public and, in particular, children. The requested sentence of 40 years' imprisonment is thus necessary incapacitate Roman for a significant part of the rest of his life so that he cannot hurt another child.

While Dr. Aoun has stated that proper mental health treatment will give Roman the opportunity to address "deeply routed psychological disturbances, [thereby] reducing the likelihood that he would reoffend" (Def. Sub. Ex. B at 16), no one can predict whether Roman will actually adhere to a treatment program or that, after treatment, he will not pose a danger.[14] Unfortunately, given Roman's persistent solicitation of child pornography, even after his incarceration, the Government believes the risk of recidivism and, therefore, danger to the community, remains extremely high.

---

[14] It is also not clear to the Government whether Dr. Aoun, as part of his report, reviewed the PSR in this case or was otherwise informed of Roman's continued solicitation of child pornography from prison. (*See* Def. Sub Ex. B. at 3-4 (listing Dr. Aoun's "sources of information")).

### D. The Court Should Reject the Defendant's Request for a Sentence Less Than Forty Years' Imprisonment

As explained below, Roman's request for a term of imprisonment of 15 years is woefully inadequate and would not achieve the goals of sentencing. Similarly, the Government respectfully submits that even the Probation Office's recommended sentence of 20 years' imprisonment would entirely fail to satisfy any of the purposes of sentencing and, to the contrary, would substantially undermine public respect for the law and confidence in the justice system.

It appears that the primary motivating factor behind Roman's request is Roman's difficult childhood. (Def. Sub. 2-5). The Government has no basis to dispute the description of Roman's childhood, which appears to have been quite troubling and difficult. However, the Government's plea offer, which has a mandatory maximum of forty years' imprisonment—as opposed to life imprisonment as otherwise would be recommended by the Sentencing Guidelines—already takes into account any mitigation that should be considered from his troubling childhood. No further mitigation is appropriate in this case in light of Roman's horrific conduct.

Roman also asks for leniency because his conduct was purportedly motivated by his desire to satisfy his incestual sexual desires, rather than to see child pornography. (Def. Sub. 5-6). As an initial matter, even if the Government were to credit Roman's justification, Roman himself acknowledges that he knew that incest is "illegal." (Def. Sub. Ex. B. at 15). Accordingly, his desire to solicit illegal conduct should provide no basis for mitigation. Moreover, Roman's purported motivation for his conduct should not carry much, if any, weight given the immeasurable harm he caused to so many women and victims is the same. It also provides no justification for his complete disregard to the pain and suffering of his victims. If Roman were truly interested only in soliciting incestual videos, he would have no need to direct his female co-defendants to engage in harmful conduct with their victims. For example, there would be no need for him to direct Harrison to smack Victim-7 and make Victim-8 gag. Nor would there be a need to threaten Victim-1 and his female co-defendants with posting images online or with physical harm. Given the number of people he contacted on Facebook, he could have just reached out to another women. Instead, as Roman acknowledges himself through his admission that he was "aroused . . . by knowing that the women would do whatever he asked them to do for money," Roman appears to have been motivated the power and control. (Def. Sub. Ex. B at 13). Roman's self-acknowledged desire for control over the women as a motivation for his conduct should provide no basis for a sentence under the Stipulated Guidelines Sentence.

Roman also appears to ask for a sentence for no more than thirty years of imprisonment because Roman will not be able to get proper mental health treatment if he receives a sentence of more than thirty years' imprisonment. (Def. Sub. 6-7). Specifically, Roman attached a declaration from a purported prison expert who has stated that Roman would not be eligible for non-residential sex offender treatment program ("SOTP") if he has more than 30 years left on his sentence. (*Id.*; Def. Sub. Ex. C). However, based on the Government's conversations with the BOP, the Government has learned that there is no limitation on participation in non-residential SOTP based on sentence length. In any event, for the reasons described above, given the almost guaranteed likelihood of recidivism, the need to protect the public from Roman's future crimes is paramount.

Finally, Roman requests a lighter sentence in light of the difficult period of incarceration he has suffered. The Government does not dispute that, while possessing a contraband cellphone,

Roman was in an altercation in or around December 2022 where he sustained certain wounds, which are described in Exhibit F. However, for further support for his argument, Roman attached the "Warden's March 2023 Memo," which discusses how conditions at the MDC have been difficult because of, among other things, the increase of weapons and cellphones. But, as described above, Roman has been a contributing factor these conditions by possessing a hazardous tool and, on at least three occasions, possessing a contraband cellphone. Roman should not be rewarded with leniency when his own illegal conduct has contributed to difficult conditions at the MDC.

* * *

The Government understands that a request for forty years of imprisonment is a serious one, and it is not a request that the Government makes lightly. However, for the reasons explained above, including the length and scale of Roman's heinous conduct which caused immeasurable harm to countless victims, the likelihood of recidivism and the corresponding need to protect the public from Roman for as long as possible, and the need for specific and general deterrence and to promote respect for the law, the Government submits that a term of forty years of imprisonment is necessary to achieve the goals of sentencing. Anything less would be insufficient to serve the purposes of sentencing.

### E. Conclusion

For the reasons set forth above, a sentence of forty years' imprisonment is necessary to achieve the purposes of sentencing.

Respectfully submitted,

DAMIAN WILLIAMS
United States Attorney

By:     /s/
Rebecca T. Dell
Assistant United States Attorney
Tel: (212) 637-2198

Cc:   All Counsel (ECF)